JAMES MORGAN *et al.*, Appellants, *v.* WILLIAM B. HERRICK, Administrator, etc., and THORNTON HERRICK, a minor, who sues by his next friend, William B. Herrick.

APPEAL FROM COOK.

On a contract for a sale of land, upon which land was a nursery, to be conducted as a partnership transaction—a decree will be made for a conveyance under the contract, although there may be arrears due under the nursery agreement, and so also if taxes have been paid by a co-tenant for the same land, the contract of sale not being made to depend upon such conditions.

In equity, time is not necessarily deemed of the essence of a contract; but it may be so made, and then, unless peculiar circumstances have intervened, it will be considered and treated as of the essence. But in judging from the language of a contract, the intention of the parties will be considered.

Where time is of essential importance, if the contracting party dies leaving an infant heir, laches, as a general rule, will not be imputed to the infant; but such facts may furnish an excuse to prevent a strict performance of the contract, and consequent loss to the heir.

A question of heirship, though alleged in the bill and not denied in the answer, must be proved.

A tender of an amount due upon a contract, will, if not complained of as insufficient at the time, be held good—although it may not be adequate to cover taxes or a partnership liability growing out of a nursery concern—the party need only tender the amount of principal and interest due on the land contract—the other matters being subordinate to the sale.

Though a court of equity might make a decree for a conveyance depend upon the payment of or refunding of taxes, it would not deny a party his rights altogether.

Each co-tenant is equally bound to keep the taxes paid, and one who pays all taxes, can only claim to be reimbursed with interest.

THIS was a bill in chancery, filed by the appellees, in the Cook Circuit Court, on the 24th day of September, A. D. 1853, for the specific performance of a contract for the conveyance of certain real estate.

The bill sets forth in substance, that on the 9th day of May, A. D. 1848, one Joseph E. Sheffield was the owner in fee of certain tracts or parcels of land situate in the county of Cook,

31

and described as follows, viz: The Sheffield Nursery, so called, and near the corporate limits of the city of Chicago, situated on the Clybourne' farm, and bounded on the south by Clybourne Avenue, on the north by Asylum Place, on the east by the Racine Road, and on the south by Southport Avenue, etc. That the said Sheffield on same day, made a contract in writing with one Martin Lewis and one William Whitney, by which he, the said Joseph E. Sheffield, sold to the said Martin Lewis and William Whitney, upon certain terms and conditions therein mentioned, each an equal undivided fourth part of said premises.

The contract with Whitney is substantially as follows:

Joseph E. Sheffield, of the city of New Haven, in the State of Connecticut, by Wm. B. Ogden, his attorney in fact, of the first part, and William Whitney, of the city of Chicago, in the State of Illinois, thus agree:

Said Joseph E. Sheffield agrees to sell said William Whitney the equal undivided fourth part of the "Sheffield Nursery," situate on the Clybourne farm, and near to the corporate limits of the city of Chicago, containing fifty acres of ground.

Said Joseph E. Sheffield also agrees to sell said William Whitney an undivided fourth part of a strip of land forty feet in width, and extending from Clybourne Avenue to the channel of the north branch of the Chicago river, etc.

Said Joseph E. Sheffield also agrees to sell said William Whitney the equal undivided fourth part of all the improvements, tools, trees, plants, flowers, etc., contained in and belonging to said nursery on the first day of April, 1848. For all which said William Whitney agrees to pay said Joseph E. Sheffield the sum of two thousand dollars, and interest, in manner following, to wit: five hundred dollars on the execution of this contract, two hundred and fifty dollars on the first day of June, 1849, two hundred and fifty dollars on the first day of June, 1850, two hundred and fifty dollars on the first day of June, 1851, two hundred and fifty dollars on the first day of June, 1852, and five hundred dollars on the first day of June, 1853, together with interest at the rate of six per cent. per annum on the whole sum remaining unpaid thereon, payable annually on the 1st June in each year.

The expenses incurred by said Joseph E. Sheffield, through Ogden and Jones, or otherwise, for and on account of said nursery, and since the first day of April last, provided the expenses for the month of April shall not exceed two hundred and sixty dollars, exclusive of cost of horses, wagons and harness, said Whitney is to pay the undivided one-fourth part of, to said Joseph E. Sheffield, and said nursery is to be conducted hereafter, during the pleasure of the parties in interest, as stipulated in a

certain agreement, bearing even date herewith, and executed by the said Joseph E. Sheffield, by said Martin Lewis and William Whitney.

On full payment being made by said William Whitney to said Joseph E. Sheffield, of the money and interest herein agreed to be paid, the said Joseph E. Sheffield, his heirs or assigns, shall convey, or cause to be conveyed, to said Whitney, his heirs or assigns, by a good and sufficient deed, the premises hereinbefore named, or said Whitney may, at any time after making the first payment hereon, demand a deed thereof, upon executing a bond and mortgage in return thereof, and paying the expenses of said mortgage; said Whitney to pay the one-fourth part of all the taxes and assessments on the premises herein agreed to be conveyed to him subsequent to the date of these articles.

That on the same day the same parties entered into a further contract in relation to the use and occupation of said premises, which is as follows:

Whereas, The said Joseph E. Sheffield has this day sold the said Martin Lewis and the said William Whitney, each one equal undivided fourth of the Sheffield Nursery, so called, and near to the corporate limits of the city of Chicago, as by reference to the said agreement of sale will more fully appear; now, therefore, it is agreed between the parties hereto owning said premises, in the proportion of one-half as the property of the said Sheffield, and one-fourth part, each belonging to the said Lewis and Whitney, that the nursery business and also a fruit and flower garden shall be conducted thereon, during the pleasure of the parties hereto, for joint accounts, profits and loss, in proportion to their interests therein, under the following conditions and regulations:

The said Lewis shall have the direction and superintendence of the same. Said Martin Lewis shall occupy the house on the premises, now occupied by John Goode, and shall remove his family into it as soon as he can conveniently remove them thereon from New York, and as soon as said John Goode can conveniently remove therefrom. Besides house rent and the use of fruit and vegetables for his family from the garden, the said Martin Lewis shall be paid a salary of four hundred dollars per annum, out of the business of said nursery, and from the joint funds thereof, during the continuance of this agreement, said salary to commence on his return from New York, and upon his taking full charge of said nursery, and devoting his time, service and labor therein.

In case of the boarding of apprentices, laborers or others engaged in or about the nursery, by said Lewis, a proper allowance shall be made to the nursery company from the price of

board, in consideration of house rent and vegetables supplied by the nursery.

All additions of property since the 1st of April, 1848, inclusive, and all expenses for labor, seeds, tools, plants or otherwise, for account of said nursery, since that period, are to be paid for by the parties hereto, in proportion to their interest therein.

In case said Sheffield shall elect to substitute Ogden and Jones, as owners or partners with said Lewis and Whitney, in the conduct and management of said nursery, for profit or loss, it is agreed that he may do so.

The business of the said company shall be conducted under the name and style and firm of Lewis, Whitney & Co.

That on the 19th day of October, A. D. 1849, the said Whitney and the said Josiah B. Herrick, entered into a contract in writing, by which said Whitney agreed to sell to said Herrick one equal undivided one-eighth part of said premises, being the one-half of said Whitney's interest therein, which contract was as follows :

William Whitney, of the city of Chicago, State of Illinois, of the first part, and Josiah B. Herrick, of same above mentioned city and State, of the second part, thus agree :

Said William Whitney agrees to sell the said Josiah B. Herrick, one equal undivided half of his interest, being one-eighth of the Sheffield Nursery, so called, and near the corporate limits of the city of Chicago, situate on Clybourne farm, so called, and bounded as follows, to wit : and describing it as containing fifty acres of ground.

Said William Whitney also agrees to sell said Josiah B. Herrick, an undivided eighth part of a strip of land, forty feet in width, and extending from Clybourne Avenue to the channel of the north branch of the Chicago river, etc.

Said Whitney also agrees to sell said Herrick, the equal undivided eighth part of all the improvements, tools, trees, plants, flowers, horses, wagons, etc., contained in and belonging to said nursery, together with the full orders made for nursery stock up to the 19th day of October, 1849.

For all of which said Herrick agrees to pay the said Whitney the sum of two thousand and five dollars, and interest in manner following, to wit : thirteen hundred and eighty dollars on the execution of this contract, one hundred and twenty-five dollars on the first day of June, 1850, one hundred and twenty-five dollars on the first day of June, 1851, one hundred and twenty-five dollars on the first day of June, 1852, and two hundred and fifty dollars on the first day of June, 1853, together with interest at the rate of six per cent. per annum on the

whole sum remaining unpaid thereon, payable annually on the first of June in each year.

Said nursery is to be conducted hereafter during the pleasure of the parties in interest, as stipulated in a certain agreement, bearing even date herewith, and executed in a form and manner after an agreement made by Joseph E. Sheffield, Martin Lewis and William Whitney, hereinbefore recited.

On full payment being made by Josiah B. Herrick to said Whitney, of the money and interest herein agreed to be paid, the said Whitney, his heirs or assigns, shall convey, or cause to be conveyed to said Josiah B. Herrick, his heirs or assigns, by a good and sufficient deed, the premises hereinbefore named, or said Josiah B. Herrick may at any time, after making the first payment hereon, demand a deed thereof, upon executing a bond and mortgage in return therefor, and paying the expenses of said mortgage.

Said Josiah B. Herrick to pay one-eighth part of all the taxes and assessments on the premises herein agreed to be conveyed to him, subsequent to the date of these articles.

Chicago, Oct. 19, 1849.

That in and by said last mentioned contract, it was agreed that said Herrick should pay to said Whitney, the sum of $2,005, and interest, in manner following: $1,380 on the execution of the contract; $125 on the 1st day of June, 1850; $125 on the 1st day of June, 1851; $125 on the 1st day of June, 1852; and $250 on the 1st day of June, 1853, together with interest, at the rate of six per cent. per annum, on the whole sum remaining unpaid thereon, payable annually on the first day of June in each year.

That it was further stipulated, that upon full payment being made, said Whitney should convey to Herrick by a good and sufficient deed, and that said Herrick might at any time after making the first payment thereon, demand a deed thereof upon executing a bond and mortgage in return therefor, and paying the expenses of said mortgage.

That said Josiah B. Herrick, on the 20th day of October, A. D. 1849, paid to Whitney the said sum of $1,380, the amount of the first payment. That afterwards, the precise day being unknown to the complainants, said Josiah B. Herrick paid to said Whitney the sum of $125, and the interest on the whole amount due on said contract, on the first day of June, A. D. 1850.

That on the 14th day of July, A. D. 1850, said Josiah B. Herrick died intestate, leaving said Thornton Herrick his only child and heir at law.

That William B. Herrick was duly appointed the administrator on the estate of said Josiah B. Herrick, on the 15th January, A. D. 1851.

That afterwards, the said W. B. Herrick, administrator, paid to said Whitney the further sum of $90, to be applied in payment of moneys due on said contract.

That afterwards, the said Whitney conveyed to James Morgan and Thomas Morgan, (the appellants) all said Whitney's right, title and interest in said premises, under said contracts.

That the said appellants before and at the time of the said conveyance, severally had notice of the equitable rights of the said Herrick, and of all the foregoing facts.

That the terms of said contract, between Sheffield and Whitney and Lewis, having been fully performed on the part of Whitney, the said Sheffield and wife, by deed dated January 20, 1853, conveyed and confirmed unto said Morgans the said premises, first described in said contract.

That on the first day of June, 1853, William B. Herrick, by his agent and attorney, tendered to James Morgan the sum of $595.44, being the sum of money then due for principal and interest on said contract, and then and there requested of said James Morgan, that he and said Thomas Morgan would execute to said Thornton Herrick, a deed of one undivided eighth of said premises, which they refused to do.

The bill sought an answer under oath from the defendants.

Prayer, that the said William Whitney, James Morgan and Thomas Morgan, may be decreed specifically to perform the said agreement between said Herrick and said Whitney, and to make a good and marketable title to said premises, the said complainants being ready and willing, and hereby offering specifically to perform said contract on their part.

The defendant Whitney did not answer, nor was any default entered against him.

The said James Morgan filed his answer to said bill on the 22nd November, 1853.

The answer admits that Sheffield was the owner of the premises in question; admits that a contract was made between Sheffield and Whitney, and between Sheffield and Lewis, on the 9th of May, 1848, for the conveyance to each, of the one-fourth part of said premises, but denies that there was any such joint contract as described in said bill.

Admits the contract relating to the nursery business.

Admits the contract between Whitney and Josiah B. Herrick, of October 19, 1849.

Admits that Herrick did, on the 20th October, 1849, pay to

Whitney the sum of $1,380, the first payment on said contract. Also the sum of $125, and the interest on the whole amount due up to the first of June, 1850, which payment was made July 15, 1850.

States that the defendants have no knowledge or information in relation to the death of the said Herrick, or in regard to the said Thornton Herrick being the only heir of said Josiah B. Herrick, except from the statements in the bill. Admits that W. B. Herrick was appointed administrator of said Josiah B. Herrick.

Admits that William B. Herrick paid to said Whitney the sum of $90, to be applied in payment of moneys due upon said contract, and that said payment was made July 15th, 1850, and that at same time, said Herrick made a payment of $125 upon said contract, but the respondents claim that the said sum of $90 was expressly paid by said W. B. Herrick on account of the share of the said Josiah B. Herrick's estate for and on account of the expenses of carrying on and maintaining the said Sheffield Nursery, and not upon the purchase money for said land.

Admits that on the 2nd day of April, 1852, said Whitney conveyed and assigned, for a good and valuable consideration, all his interest in said premises, under and by virtue of said contracts of purchase, to the said appellants.

In response to the charge that the said appellants had notice of the rights and equities of the said complainant, the answer sets forth that the said purchase of Whitney was made under the following circumstances, viz.:

That on or about the 1st of April, 1852, said Whitney applied to said James Morgan to purchase his interest in said premises, alleging that he, Whitney, had failed to make his payments, and fulfill and perform said contract, and that he was wholly unable to make said payments, and that William B. Ogden, as the attorney of said Sheffield, refused to grant any longer or further extension of the payments, and was determined to and would declare the contract between said Sheffield and said Whitney forfeited, unless all the payments and advances, then due and owing, and which had been for a long time due and owing on said contract, were paid, and said Whitney further asserting that the said complainant, W. B. Herrick, had been repeatedly solicited and requested by the said Whitney to fulfill and comply with the terms of said contract of said Josiah B. Herrick with said Whitney, and that the said complainants had neglected to comply with the terms thereof, and that said Whitney was unable to fulfill and comply with the said contract, on

account of the failure of said Josiah B. Herrick, and of the complainants, to fulfill and comply with the said agreement between the said Herrick and said Whitney; that he, Whitney, had applied to several persons to purchase the said interest, and could not procure a purchaser; and under these statements and representations, the said James Morgan, on behalf of himself and said Thomas Morgan, made the purchase aforesaid of the said Whitney's right, title and interest in the said contract.

That at the time of said purchase, the said Morgans had to pay and did pay to W. B. Ogden, as attorney in fact for said Sheffield, on account of said contract with Whitney, the sum of $898.64 in cash, on account of the amount due by said Whitney, by virtue of said contract, for taxes, payments and interests; also the further sum of $1,000 in cash to said Whitney, for said interest, and assumed the payments and obligations of said contract, and that he paid the full value of said property at the time of said purchase.

That at the time of the said purchase, the said complainants, as the representatives of said Josiah B. Herrick, had frequently neglected to comply with and fulfill the terms and conditions of the said contract between said Herrick and Whitney, and had failed to make the payments for taxes and assessments, under and by virtue of said contract, although frequently applied to by said Whitney; and avers that the said contract between the said Herrick and the said Whitney was forfeited by such neglect.

That the defendant, James Morgan, since the purchase, and up to the time of forfeiting the contract, has frequently applied to the said W. B. Herrick to pay the amount due for Josiah B. Herrick, on said contracts, and stated to him that although said Morgan considered the contract forfeited, yet that the said Morgans were still ready and willing, and offered to consider the contract still in full force, and to execute the same, provided the complainants would pay to them the amount due, and that the complainants wholly neglected to pay said amount, and comply with said contract, and to pay their proportion of the taxes, assessments and payments.

That in May, 1852, said James Morgan presented an account to said W. B. Herrick, as administrator of said J. B. Herrick, of the amount due on said contract, in pursuance of a previous understanding with said W. B. Herrick, that he would apply to the County Court for leave to sell said interest of said Herrick, in said property, and said Morgan offered to file said account as an account against the estate of said Herrick, and repeatedly

solicited said Herrick to procure a sale of said interest, which he neglected to do.

That in October, 1852, said W. B. Herrick agreed to pay the share of said Herrick in certain improvements required for said Nursery business, and afterwards refused to pay, in consequence of which the Morgans had to pay and did pay the sum of $125 due, for said Herrick.

That the said James Morgan notified the said W. B. Herrick repeatedly, that unless the said back payments, assessments and taxes, due and owing by the estate of the said Josiah B. Herrick, were paid, that they should declare the contract between said Whitney and said Herrick forfeited.

That the said Morgans having wholly failed in all endeavors to procure any adjustment, and been repeatedly deceived by said W. B. Herrick, and having been compelled to advance moneys on account of said nursery, and to pay taxes and assessments on said property, without ever having received one dollar from either of the complainants since the said purchase of said premises, and the said complainants never having made any payment on said contract, or in any way or manner attempted to fulfill the terms and conditions of said contract, the said James Morgan did, in behalf of himself and the said Thomas Morgan, in the month of October, 1852, declare the said contract between the said Whitney and said Josiah B. Herrick to be forfeited for the repeated non-fulfillment of the terms and conditions of said contract.

That said W. B. Herrick had been repeatedly applied to by said Whitney to fulfill said contracts before the sale of said premises to said Morgans, and had neglected so to do since the payment of $125, and $90, in July, 1851.

Admits that the Morgans fulfilled the contract between Whitney and Sheffield; that Sheffield executed a deed of the premises to said James and Thomas Morgan, excepting the last described tract in said contract, which had been forfeited to said Sheffield by the said parties not having constructed the canal according to agreement.

Admits a tender by W. B. Herrick, June, 1, 1853, of $593.44; but denies that the same was the sum of money due on said contract.

States that defendants have no recollection of any demand of a deed, and leaves complainants to make proof of it.

Avers that the said James and Thomas Morgan and Whitney have paid the assessments and taxes due and owing and payable on the part of said Herrick, and that Herrick in his lifetime, and his representatives since his death, neglected to

pay these, and that they were required by the contract to pay these.

Charges that complainants had no intention to fulfill said contract, until the late rapid and extraordinary rise in value of real estate in Chicago and vicinity, had rendered the said property desirable as a speculation.

The answer of Thomas Morgan is the same in substance as that of James Morgan.

By an amended answer, filed by leave of court, October 23rd, 1857, James Morgan states that at the time of their purchase the interest claimed by said Whitney in said premises, and all right of said Whitney under said contract with Sheffield, had been forfeited by the default of Whitney in not paying the amount required by said contract at the time specified therein. That said Whitney never paid the interest due, or the taxes, and that at the time of said Morgan's purchase, April 2nd, 1852, there was due, owing and unpaid on said contract between Whitney and Sheffield, the following sums of money, viz: $250, due June 1st, 1850 ; $250, due June 1st, 1851 ; together with taxes and the annual interest, amounting in the whole to the sum of $830.49, portions of which sum had been in arrear more than three years.

That the said James Morgan tendered to said Ogden, attorney of Sheffield, on April 7, 1852, the amount due on the contract, provided he would give them a deed upon payment of the balance due on said contract, which Ogden refused to do, and claimed that as the contract had been forfeited by Whitney, he had no longer any right to demand a deed of said premises, and said Ogden would not execute said deed unless said Morgans would pay him, in addition to the amount required by the contract, the further sum of $67.10 ; that the said Morgans were obliged to pay and did pay said sum of $67.10, in addition to the sum of $831.54 in arrear on the contract, making in all $898.64, in order to obtain any title to said premises from said Sheffield.

The allowance of this amended answer was excepted to by complainants.

It was admitted as a fact in the case, that Thornton Herrick was an infant of seven or eight years of age.

It was proved by the deposition of William B. Ogden, a witness for defendants, that as the attorney in fact of Joseph E. Sheffield, he made the contract with Whitney, of April 2, 1852.

That said Whitney had made the following payments on said contract: $500 in June 21, 1848, due May 9, 1848; $100 in September 5th, 1849, due June 1st, 1849; $100 in September

6th, 1849, due June 1st, 1849; $50 in November 5th, 1849, due June 1st, 1849.

That said Whitney never paid any interest on the purchase money, or any taxes on the land, although required to do both by the contract.

That in April 2, 1852, when the Morgans purchased, there was past due and owing on said contract, the following sums: $250, due June 1, 1850; $250, due June 1, 1851; interest on purchase money at rate of 6 per cent., amounting to $312.90; taxes for 1848, amounting to $3.59; taxes for 1849, amounting to $4.36; taxes for 1850, $7.35; with interest thereon, amounting in the whole to the sum of $830.49; which was the amount in arrear on said contract, by said Whitney, at the time of said Morgan's purchase.

That payment had been frequently demanded of said Whitney, and he had failed to make the same and declared his inability so to do on account of Herrick's failure to pay him.

That on the 7th April, 1852, the said James Morgan offered to pay the amount then past due and owing on said contract, which witness, as attorney of Sheffield, refused to receive, unless he paid a further sum of $67.10, over the amount due; for the reason, that as Whitney had neglected to make the payments when due and comply with the contract, the same was at his option forfeited, and that he was unwilling to lay out of the use of the money without some additional consideration over and above six per cent. interest.

That said James Morgan was obliged to pay, and did then pay, to him the sum of $898.64, and which was $67.10 over and above the amount due on the contract, as an additional consideration, to be reinstated in the contract.

April 7, 1852, said Morgan paid,   $285.84
May 31, 1853,  "   "   "   530.00

          $715.84

That on the 17th of January, 1853, he (Ogden), as attorney of Sheffield, executed a full warranty deed to the said Morgans.

That the said premises were worth in April, 1852, $250 to $350, per acre; June 1, 1853, from $500 to $700, per acre, and the present value (1857) $2,000 to $2,500, per acre.

That the value of Herrick's one-eighth interest in June, 1851, was from $900 to $1,200; on the 1st June, 1853, it was $3,200 to $4,000; and the present value $12,000 to $15,000.

No evidence was offered of the death of Josiah B. Herrick, or that Thornton Herrick was heir of said Josiah B. Herrick, or that he left no other heirs.

An interlocutory decree was rendered November 7, 1851, sustaining the right of the complainant to a specific performance, and ordering that the cause be referred to a master, to take proofs of the sums of money paid out and advanced by the said Morgans, on account of the interest claimed by said complainants to protect and carry on the Sheffield Nursery, in accordance with the said contract, and to cause a statement of the nursery accounts to be made, showing the state of the accounts, and also to take proof of any sums that may be due and owing to the said Morgans by virtue of any of the contracts hereinbefore mentioned, and to calculate interest on all the amounts from the day of payment, or time the same was due, to the date of decree, and report the same to the court with specific items.

The report of the master was filed January 30, 1858. It is a detailed statement of the accounts.

The report sets forth that the said Morgans claimed, that as by the terms of the contract of sale by said Sheffield to Herrick of the interest in said nursery premises, the interest on said contract was payable annually, that on stating the account, the interest should be compounded, which claim was disallowed by the master.

Also, that the said Morgans should be allowed the sum of $67.10, paid by them to W. B. Ogden, attorney of Sheffield, for the purpose of being reinstated in the Whitney contract, which was in default; which was disallowed by the master.

The following exceptions were filed to the report of the master, which were overruled by the court:

1. For that the master took and received proof of the receipts and expenditures on account of carrying on the nursery, subsequent to the filing of the bill.

2. For that the master did not include in said report, the amount of $67.10, paid W. B. Ogden, attorney of Sheffield, to be reinstated in the contract, and on account of forfeiture.

A decree was entered March 2nd, 1858, by which the said James and Thomas Morgan were ordered to make a deed, conveying to the said Thornton Herrick, one equal undivided half of all the right, title and interest which they acquired by virtue of the deed from said Sheffield, from which an appeal was taken to this court.

Errors assigned, are:

1. The court erred in rendering a decree for complainants in said bill.

2. Because the said complainants had not shown a performance of the agreement set forth in the bill, in respect to the payments required by the said agreement.

3. Because the said complainants failed to tender the amount due on said contract.

4. Because there was no evidence offered of the heirship of the complainant.

5. Because the complainants failed to pay or to tender the taxes due on said premises.

6. Because said contract had been forfeited.

7. The court erred in decreeing a specific performance against the Morgans, who bought in good faith, for a full and valuable consideration, after notice of default on the fulfillment of the contract by Herrick.

8. The court erred in overruling the exceptions to the master's report.

ARNOLD & LARNED, for Appellants.

THOMAS, ROBERTS & BLACKWELL, for Appellees.

BREESE, J.    The principal questions presented in this case are, 1, Was time of the essence of the contract made by Josiah B. Herrick, deceased, with William Whitney, on the 19th October, 1849, for an interest of one-eighth in the land in controversy ; 2, Did the non-performance of complainants at the time, work a forfeiture of the contract, and justify the defendant Whitney, in selling to his co-defendants, James and Thomas Morgan, and then in buying the same interest, they being fully informed of the existence of this contract, and of all the circumstances in regard to it; 3, Was the tender by the administrator on the 1st of June, 1853, a sufficient tender, and 4, Was the heirship of Thornton Herrick, sufficiently established, and a subordinate question, growing out of exceptions to the master's report.

It will be observed, there is no appearance or answer by Whitney.    The case has been argued, on both sides, with ability, and much industry and research exhibited in the collection, and collation of authorities, supposed to bear on the case, and as furnishing this court the rule which should govern it, if any general rule can be said to exist in such cases.

As to the tender by the administrator on the 1st of June, 1853, the day on which the last payment became due, of $595.44, it is alleged, that being less as found by the report of the master, than the amount actually due on the contract, it is an insufficient tender.    It will be observed here, that the tender was not objected to on this ground at all.

The report of the master, and the decree of the court consequent thereon, makes the amount due, $833.83, but it will be ob-

served, that this computation was made on the 5th of April, 1858, nearly five years after the tender, and is made up of deficits growing out of the nursery contract, and non-payment of Herrick's share of the taxes on the land, as well as the defaulted payments on the contract. The sum tendered was the amount due with interest for the land, nearly five years anterior, and was on the land contract only, and which we think, was all that was necessary to be tendered, for the facts show, that this " nursery concern," although growing out of the sale by Sheffield who owned it, to Whitney of one-fourth interest in it, did not in any sense, make the contract of sale of that interest dependent upon *it*—it was subordinate to the sale. They were partners in the nursery, but not in the land, of that, they were tenants in common, each owning a specified undivided interest, and it is expressly stipulated in the " nursery contract," that it is to be conducted thereafter, during the pleasure of the parties in interest, as stipulated in the agreement with Sheffield, Lewis and Whitney, which is, " for joint accounts, profits and loss, in proportion to their interests therein." It was no part of the contract for the land, that it should be forfeited, if the dues on nursery account were not paid. If the deferred payments for the land were met, Whitney would have been obliged to convey, and the court would so decree, if Herrick was in arrears on nursery account, though the court might make it a part of the decree, that the amount so in arrears should be a lien on the " nursery." The contract to convey the land would not be affected by these arrears. And so of the payment of the taxes. Each co-tenant is equally bound to keep the taxes paid, and one who pays all, can claim no advantage over the other on that account, he can only claim to be reimbursed with interest. It could not deprive the laggard of his right to resort to a court of chancery to compel a conveyance, having paid the purchase money, though the taxes were unpaid. The court might impose terms, that until the taxes and interest and costs were paid, the deed should not be delivered, or any other reasonable terms. The right to have a deed for the land, grows out of the contract to make a deed, and it expressly provides, that a deed may be demanded on payment of the first installment of the purchase money, giving bond and mortgage in return. It was not at all, in any sense, dependent on payment of the nursery expenses and taxes, or anything else but the purchase money, at the several times specified.

The other questions in the case and the most important will be examined together.

It is a familiar principle, that at law, the time fixed for the performance of a contract is deemed of the essence of the con-

tract; and generally, if the seller is not ready and able to perform his part of the agreement on the day, the purchaser may elect to consider the contract at an end. *Tyler* v. *Young et al.*, 2 Scam. R. 446.

But in equity, time is not necessarily deemed of the essence of a contract, indeed, it was formerly held that the parties could not make time the essence. Courts of equity are frequently called on to relieve, where the terms for the performance and completion of the contract, have not, in point of time, been strictly complied with. *Smith* v. *Brown*, 5 Gilm. R. 314. The parties may make time of the essence of their agreement, and when this distinctly appears to have been their intention and no peculiar circumstances have intervened to prevent or excuse a strict performance, it must in equity be considered and treated as of the essence. As with all other contracts, the intention of the parties controls.

The contract between J. B. Herrick and Whitney, is substantially the same, with that of Sheffield and Whitney, and both, only provide a day or time on which the several payments shall become due and payable, and providing, that on the payment of the first installment a deed may be demanded on giving a mortgage, they both expressly provide, that on full payment of the purchase money " a deed should be made." It is true, the time specified in the notes from Herrick to Whitney, are the same days and times on which his own notes to Sheffield are due and payable, and the most that can be made of that circumstance is, that Whitney probably, looked to it as a fund out of which he might discharge one-half of his indebtedness to Sheffield. It might be important to him that Herrick should " come to time," but no forfeiture is declared if he does not—but whenever full payment is made a deed shall be made. Had it been in the contemplation of these parties, that being in arrears should put an end to the contract, it was very easy so to provide as in *Smith* v. *Brown*, 5 Gilm. R. 314 ; *Kemp* v. *Humphreys*, 13 Ill. R. 573, by declaring, in that event, the agreement shall be null and void, or in some other appropriate form express such intention. We do not say that the intention shall be actually expressed in words, but we do say, that the contract itself and the attendant circumstances, must make manifest the intention.

We find no other circumstance except that of making Herrick's notes correspond, in time of payment, to Whitney's notes to Sheffield, and as in the notes to Sheffield a day being fixed for payment, time is not thereby made of the essence of the contract so neither is it in the notes of Herrick to Whitney. There is nothing whatever to show that such was the intention of the parties, nor can we conceive of any very strong reason,

why, in this particular case, time should be of the essence. Sheffield did not make it so with Whitney, by his agent Mr. Ogden, though he states in his deposition, that such was the rise in value of real estate in and about Chicago for the last ten years, " that time is considered to be of the essence of contracts for the sale and purchase of real estate, whether so expressed or not."

We do not so understand the meaning of the terms, " of the essence," that it has reference alone to the rise in the value of lands, or that it is subject to its fluctuations, but depends wholly upon the intention of the parties which, it is true, that consideration may and does greatly influence.

Indeed that consideration does not seem to have influenced either of these parties. The agreement to give a deed, on the payment of the first installment and a mortgage to be returned, is a very strong circumstance to show that time was not considered of the essence, for on taking an ordinary mortgage, the aid of a court must be invoked for a strict foreclosure and sale, all which is productive of great delay, to which is to be added the time given by statute in which to redeem after sale. We are clearly of opinion, that as to this contract time is not of its essence, and that the parties did not intend that it should be void, if the payments were not made on the days and times stipulated.

But if time was of the essence of this contract, has any circumstance intervened to prevent or excuse a strict performance.

The facts show, that soon after the payment of the first installment and interest by J. B. Herrick, he left for a distant State, and died, leaving as is alleged, an only child, Thornton Herrick, one of the complainants in this suit, in a state of the most helpless infancy, being at the time of the decree not more than seven years of age, and having at no time a guardian. It is true, administration was granted on his estate, but of its condition we are not informed, nor of the conduct of the administrator in the execution of this trust. He could, doubtless, had he been so disposed and had the means, have paid the installments as they became due, and it was his duty so to do, if, in his judgment, it would have been for the benefit of the estate. This was a problem left for his own solution, and for its correct solution he was responsible. There are cases where heirs have suffered from the *laches* or dishonesty of the administrator, but courts do not, as a general thing, allow them, or any delinquencies in the management of the estate, to work serious, and perhaps, irremediable injury to infant heirs, if they can prevent it by a proper exercise of the powers with which they are vested. Infants are the peculiar objects of chancery care—they are the

wards of the court, and it must be a very strong case indeed, in which they will impute laches to them, or as a general rule, suffer them to be prejudiced or injured by lapse of time, or by the conduct of others, with whom they are not in privity, and whose actions they can neither control or advise.

The death and intestacy of the ancestor, and infancy of the heir at law, we regard as strong circumstances, to prevent and excuse a strict performance of this contract.

But we have said we do not consider that time was expressly or necessarily of the essence of this contract, and not being so, it is purely a matter for the exercise of that sound discretion which exists in the court, to enforce it or refuse, as the circumstances may warrant. The doctrine in equity is not forfeiture, but compensation.

The books are full of cases where, in contracts like this, and sought to be enforced, in which the stirring, business men of the world were parties, rigid rules have not been applied. Cases abound where credit is given, and a conveyance to be made on payment of the last installment, as in this case, and time not the essence of the contract. Courts of chancery have enforced a specific performance, though the payments have not been promptly made. If so with full grown men, then, surely, when an infant, a mere child, is litigating.

A leading case in this court, on this subject, is that of *Glover* v. *Fisher et al.*, 11 Ill. R. 666, cited by the appellees' counsel. That case has not the strong features which this has, arising out of death, intestacy and infancy, but in other facts bears a close resemblance, those of the payments especially. In that case twenty-one hundred dollars was the price stipulated for the property; here two thousand and five dollars. There, nine hundred dollars was paid down, less than one-half the purchase money—here thirteen hundred and eighty dollars, more than one-half. There, in October, about six months after the contract, four hundred dollars was to be paid, of which two hundred and twenty dollars was paid before due, and the remainder, one hundred and eighty dollars, was delayed until the first of May following, the time of the last payment, when six hundred dollars was tendered, a sum less by near four hundred dollars than the amount actually due. Here, the whole of the first installment was paid, and the interest on the balance of the purchase money—near three-fourths of the second installment was paid, and although the third was wholly neglected, the whole amount actually due, was tendered on the day of the last payment when a deed was, by the contract, to be executed. The court, in the case cited, considered the extent of the delay—the amounts which had been paid, and all the circumstances which may have

32

excused or justified the party in his remissness, and pronounced a decree in his favor.

In that case there was a delay of more than fourteen months before the complainant offered to pay the full amount due. The conduct and motives of both parties was regarded in determining if this delay should work a forfeiture, and the court thought there was nothing in it, to show that it was caused by a design on the part of the complainant, to abandon the contract.

In this case the only defalcation was in a small part of the second, and in the whole of the third installments, amounting in all to a sum not exceeding two hundred dollars including the interest due on the balance of the contract. The administrator did not provide for these payments, and the infant was powerless to act, and it would be going farther than any court or case has gone, to declare that for such remissness, under such circumstances, a forfeiture of the contract should be declared. For failing to pay the pitiful sum of two hundred dollars on the very day it was due, when sixteen hundred dollars had been promptly paid, and the party an infant incapable of action and without a guardian—to decree a forfeiture under such circumstances, is asking more than justice will allow. There can be no pretense here, that the complainant had, wantonly, and in the exercise of an arbitrary will, or caprice, refused to pay on the day, he having the means and the power to make the payments, nor any other pretense, the naked fact being alone relied on, that the payment was not made on the day. *Tyree et al.* v. *Williams et al.,* 3 Bibb, 367.

But let us look at this case a little further.

The defendants Morgan, made the purchase of Whitney of this child's interest, on the 2nd of April, 1852, two months before he was in default for the third installment. At that date, there was due on the contract about sixty dollars only. The administrator did not pay, being unable or indifferent; the little child, " muling and puking in his nurse's arms," unconscious of its own existence except through its appetites, could only cry for food, and now, to visit him with the severe penalties demanded by the defendants, would be harsh indeed.

Though Whitney's payments to Sheffield were in arrear, time not being of the essence of their contract, it could not have been declared forfeited, on that account, for a specific performance would have been decreed, on payment, or tender of the whole purchase money if made on the day of the last payment, no intention of abandoning the contract being manifested, and that being the day on which a deed could be demanded.

And that this money due from Herrick, was to be applied to save this contract from forfeiture, cannot be true, as appears by

the defendant, James Morgan's own showing in his amended answer. It will be remembered, that Herrick succeeded to one equal half of this contract, and was to pay, and did pay about the time it was due, 1st June, 1850, one hundred and twenty-five dollars, being the one-half of the amount due from Whitney to Sheffield on that day, and that the administrator paid him the further sum of ninety dollars in the summer of 1851, being nearly two-thirds of the amount then due. Now if this money due from Herrick was necessary to save this contract, why did not Whitney apply these amounts or some portion of them, to extinguish so much of it—$215—as it would extinguish? That he did not, is shown by James Morgan's amended and sworn answer, for he there says, "at the time of his purchase from Whitney, April 2nd, 1852, there was due, owing and unpaid on said contract, between Whitney and Sheffield, the following sums of money, viz.: $250 due June 1st, 1850, $250 due June 1st, 1851, together with taxes and the annual interest," etc., being the amounts precisely, which Whitney owed Sheffield, when he sold to Herrick.

That the money due from Herrick was wanted for any such purpose may be true, but when received, that it was not so applied, is most certainly true. Mr. Ogden's testimony shows, Whitney was in arrear on his payments, independent of Herrick's, up to the time Morgan made the purchase, and Whitney's whole conduct shows an intention to defraud Herrick, for when he received of him $1,380, at the time of making the purchase, he paid not one dollar of it over to Sheffield, though then largely in arrears.

This then seems to be a mere pretense, and as Whitney had not appropriated any portion of the payments made by Herrick to the satisfaction of his contract with Sheffield, it is not probable he would have so appropriated any future payments, and would suffer the contract to be forfeited in reality.

Through Whitney's remissness, his contract with Sheffield, would, most probably, have been forfeited, as we have seen he appropriated none of the moneys he received, to save it.

But the defendants say, we have received none of the money Herrick paid to Whitney, and have paid out large sums to save the estate from forfeiture, and ample justice can be done complainants, by decreeing against Whitney a return of the purchase money—our purchase should not be disturbed—the estate has risen rapidly in value, and is now worth twelve or fifteen thousand dollars.

Was it the fact that Whitney was able to respond in damages, we should not deem recourse to him, as in any degree meeting

the just demands of this case. It would not afford adequate compensation.

No part of the defense seems to us, to have any merits. One of the defendants, James Morgan, is a member of the bar, and it is not an unjust presumption, that he was fully cognizant of the whole case, and designed to do, what he attempted. We cannot recognize, under the circumstances of this case, any claim, he and his co-defendants may suppose they have to the favorable consideration of the court, and we want no other authority to sustain us in disposing of it, than those pure and universally acknowledged principles of equity and justice, which should have their lodgment in the breast of every court.

The exceptions to the master's report, are not deserving of special notice.

The first could not prejudice, materially, the defendants, and the second, is the amount of the *douceur*, $67.10, the Morgans paid to obtain the chance to do a wrong. It was a small sum to pay for the hazard, and we think no good claim is shown, to demand its restoration. The defendants' case, in no aspect, has any merits whatever, as we think.

There is, however, a want of proof of the heirship of Thornton Herrick, though this fact does not seem to have been contested, but was considered, on the hearing, and at the time of passing the decree, as not in issue between the parties. It is a material fact, and which, though not expressly denied, not being admitted by the answer, must be proved. *DeWolf* v. *Long*, 2 Gilm. R. 679. For this reason alone, the decree must be reversed, and the suit remanded, with directions to the court below, to hear proofs on this point only, and if this allegation of the bill, as to heirship, be proved, then to enter a decree in conformity with this opinion, the costs of this appeal to abide the event of the suit.

*Decree reversed.*