I. S. Spiro, Trading as I. S. Spiro & Company, Appellant, v. Morris R. Cable, Appellee.

Gen. No. 32,203.

344

Opinion filed April 3, 1928.

HYMAN SOBOROFF, for appellant.

A. S. & E. W. FROEHLICH, for appellee.

MR. JUSTICE SCANLAN delivered the opinion of the court.

I. S. Spiro, doing business as I. S. Spiro & Company, plaintiff, sued Morris R. Cable, defendant, in the municipal court of Chicago in an action on contract. The parties waived a jury and the cause was submitted to the court, and at the conclusion of the evidence for the plaintiff, on motion of the defendant, the court found the issues against the plaintiff. Judgment was entered on the finding and this appeal followed.

The plaintiff sued to recover upon a *quantum meruit* the sum of $973.60 for labor and material furnished in setting tile on certain premises of the defendant and for extra work in connection with the same. The suit was based upon a written contract between the parties whereby the plaintiff was to furnish and set in place tile work in said premises and the latter was to pay therefor the sum of $950. The plaintiff also claimed compensation for extra work and material which he

alleges was ordered by the defendant and for which the latter agreed to pay the plaintiff the sum of $90. Plaintiff further alleges "that after more than 85% of the work had been completed, plaintiff requested defendant to pay him part of the money due under the contract, there being a custom and usage of long standing and of which the defendant had knowledge, that in the building trades in Chicago, payments were made as follows: 85% of the contract price as the work progressed and the balance of 15% upon completion; that defendant refused to pay any moneys to plaintiff for the work done by him and refused to allow plaintiff to continue the work already started." Plaintiff further alleges that on August 27, 1926, the date when the last work was performed by the plaintiff, materials to the amount of $81 had been furnished and labor performed by him on the contract in question to the amount of $892.60, and that certain materials ordered specially for the contract in question were held for the defendant's sole use, "as they cannot be used in the general course of business." The defendant filed an affidavit of merits and a set-off. In the former he admitted the written contract "and that upon completion of the entire work the defendant agreed to pay to the plaintiff therefor the contract price of nine hundred and fifty dollars ($950.00)," but denied ordering or agreeing to pay $90 for extra work; denied that plaintiff performed 85 per cent of the work covered by the contract and denied that the plaintiff requested him to make payment of a portion of the contract price; denied the existence of the custom alleged in the statement of claim; denied that the plaintiff substantially performed his contract; "denies that the defendant refused to pay any moneys to the plaintiff, or refused to allow the plaintiff to continue the work already started, but avers on the contrary, that he always requested the plaintiff to perform and complete said contract"; alleges that the work was done in an unwork-

manlike manner; that an inferior grade of material was used, and that the plaintiff abandoned the work. In the defendant's statement of claim under the set-off he alleges that by reason of the abandonment of the work by Spiro and as a result of a conspiracy between the latter and certain officials of the Chicago Mantel & Tile Dealers Association and certain members of the Tile Layers & Helpers Association the defendant has never been able to complete the work on the premises in question and has suffered damages to the amount of $1,000. The plaintiff filed an affidavit of merits to the set-off denying all the allegations contained in the set-off.

The plaintiff contends that upon the evidence introduced by him he made out a prima facie case entitling him to recover the sum of $973.60, and that the trial court should have denied the motion of the defendant for a finding in favor of the defendant, made at the close of the plaintiff's case. After a careful consideration of the record, we have reached the conclusion that the contention of the plaintiff is a meritorious one. The only evidence submitted to the court was that offered and received on behalf of the plaintiff. It appears that the plaintiff furnished substantially all of the labor and material required by the contract. In fact, the defendant stipulated that plaintiff's evidence, if introduced, "would show that he done work to the amount of $973.60." The evidence clearly shows that the only real trouble between the plaintiff and the defendant arose on a question as to how the plaintiff was to be paid for his work under the contract. The contract did not state how payments should be made. The plaintiff claimed that there was a general custom or usage in the building trades of the city of Chicago at the time in question that a contractor should be paid 85 per cent for work done, as the work on the contract progressed. The defendant in his pleadings, in the hearing before the trial court and on this appeal, in-

sists that there was no such general custom as plaintiff claimed and that no part of the contract price was payable to the plaintiff until the substantial completion of the entire work under the contract. The proof abundantly sustains the claim of the plaintiff that such a custom prevailed. The plaintiff's testimony is to the effect that from time to time as the work progressed he requested that he be paid 85 per cent for work done, in accordance with the general custom; that the architect, who was a son of the defendant, would tell him that he would fix the matter up in a couple of days; that he made the same request of the defendant on a number of occasions and that the defendant promised that he would fix the matter up in a day or two; that on one occasion he asked the defendant to pay him the 85 per cent that he was entitled to and that the defendant promised that he would fix the matter up the next day; that promises of this character were made him almost daily; "they told me they were going to pay me the next day, and they kept saying the next day and the next day." When the work was substantially done it appears that the plaintiff, acting upon the assumption that he was entitled to 85 per cent on the contract as the work progressed, and feeling aggrieved by the conduct of the defendant, took his men off the work. Five or six days later he got a letter from the lawyer of the defendant that he should finish up the work at once, and thereupon, in company with his men, he went to the premises to complete the work, and he there met the defendant and said to him: "Mr. Cable, I am going to finish up your work, but give me an order now. I need the money," to which the defendant replied: "That is all right, but I don't want you to finish the job no more," to which the plaintiff replied: "If you feel that way, it is all right with me," and the plaintiff then left the premises with his men. It is conceded that the defendant paid the plaintiff nothing on the contract.

The defendant contends that "a custom or usage must be clearly proven by the party asserting it, and must be known to both of the contracting parties, or must be so general and certain that such knowledge of each will be presumed." We think that the plaintiff's evidence abundantly proves that the custom claimed by the plaintiff to exist in the matter of pay was so general and certain that knowledge of it will be presumed. Moreover, the evidence for the plaintiff tends to prove that the defendant admitted a knowledge of the custom in question. Under the plaintiff's theory of fact he was justified in quitting work when he did, and the defendant, not the plaintiff, was in default under the contract at the time in question. Further, it appears that five or six days after the plaintiff quit the work, the attorney for the defendant notified him to finish the work, and that the plaintiff thereupon went with his men to the premises in question and told the defendant that he was there to finish the work and that the defendant informed the plaintiff that he did not want him to finish the job. Under such a state of fact it seems idle to argue that the plaintiff, without just cause, abandoned the work.

But if we assume, for the purposes of the argument, that plaintiff was wrong in his contention as to the manner in which payments should be made under the contract, and that he was at fault in quitting the work, nevertheless, under the facts of this case, the plaintiff would be entitled to recover. Mr. Justice Windes, in *Turner v. Goodman,* 90 Ill. App. 339, 342, well states the principle that controls in the present case: "Where a party has in good faith partially performed the terms and conditions of a contract on his part, and the other party has received the benefit of such partial performance, and does not or cannot restore to the other the fruits of such partial performance and place him in *statu quo,* then the consideration of the contract must be paid, less any damages suffered by reason of

the failure to perform the contract. 2 Parsons on Contracts, p. 523, 529; *Underwood v. West,* 52 Ill. 397; *Wolf v. Dietzsch,* 75 Ill. 205; *Smith v. Brittenham,* 109 Ill. 540; *Underwood v. Wolf,* 131 Ill. 425.'' To the same effect are *Lighthall v. Colwell,* 56 Ill. 108; *Spencer v. Dougherty,* 23 Ill. App. 399, 402. In the present case there can be no doubt but what the plaintiff in good faith assumed that he was entitled to payments as the work progressed. He had almost completed his contract. In fact on the trial he made an offer to prove that there was little that remained to be done, and the court, erroneously, refused to allow him to make this proof. While, as we have heretofore said, we do not think that the evidence justifies the conclusion that the plaintiff, without just cause, abandoned the contract, nevertheless, if we assume that as the work was about complete, through some misconception of his legal rights he temporarily abandoned the work, still the law is not so unjust as to permit the defendant to obtain the benefit of the labor and material furnished by the plaintiff under the contract without payment therefor. According to the theory of fact of the plaintiff it would have required the expenditure of only a small amount to complete the contract, and yet the trial court apparently held that although it was conceded that the plaintiff had furnished labor and material to the amount of $973.60, on a contract on which the stipulated amount was $950, nevertheless, merely because he had not fully and completely performed the contract on his part, he could recover nothing from the defendant. We cannot sanction any such holding. If the defendant can prove that the plaintiff abandoned the work without just cause and that he did not carry out the terms of the contract, and that the defendant has sustained damages by reason thereof, he has the right under the pleadings to recoup for all damages he has sustained thereby.

The judgment of the municipal court of Chicago is reversed and the cause is remanded.

*Reversed and remanded.*

BARNES, P. J., and GRIDLEY, J., concur.