J. J. Brown Company, Inc., Appellant, v. J. L. Simmons Company, Inc., Appellee.

Gen. No. 46,047.

Opinion filed April 8, 1954. Rehearing denied April 27, 1954. Released for publication April 27, 1954.

A. S. and E. W. FROEHLICH, of Chicago, for appellant; EDMUND W. FROEHLICH, of Chicago, of counsel.

CAMPBELL, CLITHERO & FISCHER, of Chicago, for appellee; CARLTON L. FISCHER, of Chicago, of counsel.

MR. JUSTICE ROBSON delivered the opinion of the court.

This is an amended complaint in equity by plaintiff, a subcontractor, against the general contractor on a

lathing and plastering subcontract for construction of the Chicago State Tuberculosis Sanitarium. In two counts, the complaint first seeks to impose a mechanic's lien upon monies payable from the State, and, second, to recover damages for breach of contract. The first count of the complaint charges the defendant with (1) failure to provide temporary heat as required of it under the subcontract, thereby delaying plaintiff's performance and increasing its costs and difficulties of performance; and (2) failure to make monthly progress payments under the subcontract, thereby causing plaintiff to cease work. The second count adopts the averments of the first count and further charges defendant with (3) repudiation of its subcontract with the plaintiff. Defendant denied the charges and set up affirmative defenses. Plaintiff replied and reaffirmed its charges. Defendant thereafter moved for summary judgment and filed an affidavit incorporating the contract papers in issue, and additional affidavits of certain officers and agents of the State. Plaintiff also moved for summary judgment, filed supporting counteraffidavits, but later withdrew the motion. The trial court entered an order sustaining defendant's motion and dismissed the action. Plaintiff appeals from that order.

The purpose of a summary judgment procedure is not to try an issue of fact but rather to determine whether one exists. *Gliwa v. Washington Polish Loan & Building Ass'n,* 310 Ill. App. 465, 470; *Hartford Accident & Indemnity Co. v. Mutual Trucking Co.,* 337 Ill. App. 140, 145. The right of the moving party should be free from doubt, determinable solely as a question of law. *Bertlee Co., Inc. v. Illinois Publishing & Printing Co.,* 320 Ill. App. 490, 495. Toward this end, the supporting affidavits are to be construed most strongly against the movant (*Molner v. Schaefle,*

324 Ill. App. 589, 58 N.E.2d 744), and the whole record must be considered (*Gliwa v. Washington Polish Loan & Building Ass'n, supra,* at p. 471; *Bertlee Co., Inc. v. Illinois Publishing & Printing Co., supra,* at p. 496). With these principles of law in mind, we must determine whether a triable issue of material fact exists which is not disposed of by defendant's motion and supporting affidavits.

The first question to be considered is whether there is a triable issue on the averment that defendant was obligated to provide plaintiff's lathers and plasterers with heat and failed to do so. The form subcontract prepared by defendant is dated March 1, 1950. Plaintiff's first work under the contract was in May 1950, when it furnished and installed steel hanger rods for the lath and plaster ceiling construction. The facts occurring thereafter are disputed. Plaintiff alleges that construction had progressed sufficiently on or about December 1, 1950, to enable defendant to install and operate temporary heating facilities for plaintiff's performance, as required by the subcontract; that defendant was ordered by the Department of Public Works and Buildings and the Supervising Architect to furnish temporary heat to enable plaintiff to enter upon its performance, but that defendant failed to do so. Plaintiff further alleges that if it had been permitted to perform on or about December 1, 1950, it would have completed its performance within three months; instead, because of defendant's default, it was unable to enter upon performance of its lathing work until April 24, and of its plastering until July 11, 1951. Meanwhile, material changes in the wages and employment conditions of lathers and plasterers occurring in March, and again in May 1951, increased plaintiff's costs, expenses and difficulties of performance. All this defendant denied. In its affidavit filed in support

of its motion it incorporated the provisions relating to heat.

The subcontract incorporates and binds the plaintiff to the contract dated July 21, 1949, between the defendant and the owner, and to the "general conditions, specifications, schedules, drawings and other documents related to said contract . . . ." The subcontractor "assumes toward General Contractor any and all obligations and responsibilities applicable to the work covered by this subcontract, which, by the foregoing contract papers General Contractor assumes toward the Owner." The pertinent provision of the supplement to general conditions reads as follows:

"After building is enclosed and temporary heat is required, in the opinion of the Supervising Architect, all such heat shall be supplied by temporary steam plant heating units as furnished and maintained by the General Contractor . . . and removed by him . . . when directed by the Supervising Architect."

The lathing and plastering specifications relating to heat read as follows:

"If construction work takes place in cold weather, heat will be provided by the General Contractor under conditions as set forth in Supplementary General Conditions, but heat is not guaranteed by either General Contractor or Owner, nor that the heat so furnished will be sufficient to keep the plaster from freezing.

"This Contractor however shall provide such additional heating as he shall require to fully protect all plastering work from damage by frost. Providing such additional heat through the use of salamanders, coke and maintenance as shall be required, to provide a temperature of not less than 64 deg. F. during the setting and drying period of plaster."

Did the contract require defendant to provide heat? The contract must be read as a whole, and,

137

whenever possible, effect given to all of its parts. *Bundy v. Solon,* 384 Ill. 137, 144; *Arthur Rubloff & Co. v. Leaf,* 347 Ill. App. 191, 194. The provision of the general supplement, together with plaintiff's general assumption of defendant's obligations toward the owner with respect to the work covered by the subcontract, devolves upon plaintiff the duty to provide *"all such heat"* relating to lathing and plastering. Regarding the requirement of the specifications that *This Contractor* shall provide such *additional* heating as he shall require, there is a conflict with the *all* requirement of the general supplement if *This Contractor* is taken to mean plaintiff. Under this construction, defendant assumed the obligation to provide some minimum heat. If *This Contractor* is construed to refer to the antecedent *General Contractor* of the preceding paragraph *(Illinois Cent. R. Co. v. Beebe,* 69 Ill. App. 363, 385-6), defendant was required to provide heat up to 64 deg. F. above some minimum provided by plaintiff. Both constructions conflict with the general supplement's *all* requirement. We conclude that the instruments are ambiguous, and the issue cannot be resolved on a motion for summary judgment where the supporting affidavit, without more, merely incorporates a provision of the subcontract already set out in the answer. On the trial, parol evidence may be offered which will afford a basis for proper interpretation.

Defendant contends that, notwithstanding any delay on its part in permitting plaintiff to enter upon performance of the subcontract, it is not liable because of the subcontract's provisions. In substance, defendant alleges that delays in the demolition work and preparation of the site for construction, included in contracts let to other contractors, delayed defendant about three months in the entire progress of general construction, that to have permitted plaintiff to enter upon per-

formance of its subcontract on or about December 1, 1950, would have disrupted the operation of other trades, and would have substantially delayed general construction of the project. Defendant further alleges that plaintiff at no time prior to April 27, 1951, requested permission or offered to proceed, or protested the scheduling and sequence of performance on the entire project. Plaintiff denied these allegations and reiterated its charge that the sole reason plaintiff was deprived of its opportunity to proceed was defendant's failure to provide temporary heat.

 The provisions of the subcontract referred to by defendant and incorporated in its affidavit filed in support of its motion read as follows:

"The subcontractor shall immediately proceed with the preparation of material, and shall be prepared to start delivery and/or erection on or before Dec. 1, 1950 and shall start delivery and/or erection within 10 days after receipt of notice from the General Contractor so to do. . . . The several parts and the whole of the work contemplated under this agreement shall be commenced and carried on at such points, in such sequence and at such times as the General Contractor may direct, in such a manner as to keep abreast of the general progress of the project and so as not to delay construction of all or any part of said project. . . .

"The General Contractor may for any cause extend or agree to an extension of time for performance and completion of this subcontract, and no such extension shall alter the rights and remedies of the parties hereunder nor in any way prejudice or impair the security of the General Contractor under any bond given in pursuance of the requirements hereof."

Where no definite time for commencement or completion is specified, the court will imply a reasonable time. *Michigan Ave. M. E. Church v. Hearson*, 41 Ill.

App. 89, 92; 17 C. J. S. Contracts, at p. 819. The contract in question provides for "delivery and/or erection within 10 days after receipt of notice from the General Contractor so to do." No precise time for commencement or completion is specified. What is a reasonable time is a question of fact. *Blakely Printing Co. v. Fort Dearborn Mercantile Co.*, 321 Ill. App. 298, 53 N.E.2d 55, 56. Assuming defendant's duty to provide temporary heat, the time after December 1, 1950, within which defendant was required to furnish plaintiff with heat for its performance presents an issue of fact.

The provision of the subcontract giving defendant the right to direct the sequence or general progress of work does not release it from liability for delay. It implies an obligation on the part of the general contractor to keep the work in such a state of forwardness as to enable the subcontractor to perform within a limited time. *Nelson v. Pickwick Associated Co.*, 30 Ill. App. 333, 336; *Michigan Ave. M. E. Church v. Hearson, supra*, at p. 92, and authorities there cited; and *Guaranty Iron & Steel Co. v. Leyden*, 235 Ill. App. 191, 195. Responsibility for delay, laid by defendant upon others, rests solely with it, and the reasons alleged therefor are no defense to plaintiff's claim on a *quantum meruit*. The extension provision is likewise no defense. It purports a benefit to plaintiff (*Nelson v. Pickwick Associated Co., supra*), and constitutes no limitation on its right to treat the contract as broken and sue on a *quantum meruit* (*Guerini Stone Co. v. Carlin Constr. Co.*, 248 U. S. 334, 341).

The next and final issue we must consider is whether there is a triable issue on the averment that defendant failed to make certain monthly progress payments to the plaintiff as required of it under the subcontract, and whether it thereby breached or repudiated its con-

140

tract obligations. The subcontract on this point reads as follows:

"Section 3. The General Contractor agrees to make monthly progress payments on estimates of such work as has been executed in conformity with the contract papers and not included in any prior estimate in the amount allowed to the General Contractor by the Owner on account of the Subcontractor's work to the extent of the Subcontractor's interest therein . . . ."

Two monthly invoices submitted by plaintiff to defendant for work done prior to May 1951, were paid. The May and June invoices, rendered defendant on the last days of those months, were not paid. Defendant contends that the May invoice, included in defendant's monthly requisition for payment submitted to the Supervising Architect's Office, Superintendent of Construction, Division of Architecture and Engineering, Department of Public Works and Buildings, was not *allowed* until August 10, 1951, when a warrant issued from the State Auditor of Public Accounts for payment of defendant's requisition, directed to the State Treasurer, signed by the Auditor and countersigned by the State Treasurer. Plaintiff contends the May invoice was *allowed* by the *Owner* on July 6, 1951, when the Office of the Supervising Architect, which reviewed the amount of the requisition with reference to the work performed and materials furnished, issued a certificate of approval. The June invoice, plaintiff contends, was similarly *allowed* on July 25.

Defendant alleges that it did not pay plaintiff's May and June invoices for the further reason that plaintiff did not prosecute its work with promptness and diligence. The amount claimed by plaintiff also was and remains disputed. Plaintiff denied the allegation. Correspondence between the parties in June 1951, contains charges and countercharges, by defendant that plain-

141

tiff was delaying completion of the project by its failure to diligently prosecute its work, by plaintiff that defendant's charge, if true, was solely the result of defendant's failure to provide temporary heat and compensate plaintiff for the resulting increased cost of securing an adequate number of sufficiently skilled workmen in a high, competitive market. Defendant's letter of June 29 terminated plaintiff's employment within 48 hours, confirmed in defendant's letter of July 9. Plaintiff at all times protested. On July 20 plaintiff ceased work, allegedly because of defendant's failure to make monthly payments. On August 14 plaintiff made demand of defendant for the alleged balance due for labor and materials furnished. Defendant refused, and on October 1 employed another lathing and plastering subcontractor. Each alleges it has not abandoned or repudiated their contract, and purports to hold the other accountable.

Defendant's supporting affidavits incorporated the contract of the parties and included numerous affidavits of certain officers and agents of various offices and departments of the State. These last are testimony of third persons as to what the parties to the contract intended. In substance they assert that only the Public Auditor was authorized to *allow* defendant's application for payment, that the province or authority of the Supervising Architect, Division of Architecture and Engineering, encompassed only approval or certification of the work performed and materials furnished. What the parties intended is first to be determined from the language of their contract. The word *allowed* is not a technical term. *Giffin v. Petree,* 226 Mo. App. 718, 46 S.W.2d 609, 618. See Words and Phrases, "Allow," and cases there cited; Webster's New International Dictionary (2d ed., 1949). To defendant the word has the meaning of *paid;* to

plaintiff, *approved.* Both meanings are reasonably supported by the authorities. The State conducts its business through many agencies and officers, any one of which might be the *Owner.* Whether the parties intended *Owner* to mean the Supervising Architect, Division of Architecture and Engineering, or the Public Auditor, is contingent upon the interpretation given *allowed.* The converse is likewise true. Either construction seems reasonable, and the words are therefore ambiguous and subject to explanation by parol evidence. The trial court was not warranted, given other conflicting statements on this point in the affidavits and counteraffidavits, in arriving at a conclusion in favor of defendant. *Conrad v. Beaubien,* 334 Ill. App. 198, 207.

▮▮▮▮▮▮ Failure to make monthly progress payments when due was a material breach of contract, entitling plaintiff to suspend work until the overdue payments were made. *Guerini Stone Co. v. Carlin Constr. Co., supra,* at pp. 344–5; *Underground Constr. Co. v. Sanitary Dist. of Chicago,* 367 Ill. 360, 370. Even if plaintiff failed in its duty to provide heat or perform diligently, its right to recover on a *quantum meruit* is absolute, subject only to its good faith in partially performing, and to its duty to compensate defendant for any damages caused it by plaintiff's default (*Spiro v. Cable,* 248 Ill. App. 343, 348–9, and authorities there cited), and is not barred by performance upon defendant's failure to provide heat (*Walsh v. North American Cold Storage Co.,* 260 Ill. 322, at pp. 328–9; 17 C. J. S. Contracts, at p. 945), if such was defendant's duty, irrespective of the character of that performance if in fact caused by defendant's default (*Walsh v. North American Cold Storage Co., supra,* at p. 326). The character of plaintiff's performance being in dispute, a question of fact is presented. If

143

defendant further failed to make monthly payments, thereby preventing plaintiff's performance, it will be liable under the second count for plaintiff's loss of profits. *Central Trust Co. v. John M. Smyth Merchandise Co.*, 222 Ill. App. 347; *Paramount Pictures Distrib. Co. v. Gehring*, 283 Ill. App. 581; 17 C. J. S. Contracts, at p. 1058; 25 C. J. S. Damages, at p. 576.

The trial court was in error in granting defendant's motion for summary judgment and dismissing plaintiff's complaint. The order of the trial court is reversed and the cause remanded with directions to try the action upon the issues raised by the pleadings.

*Order reversed and cause remanded with directions.*

SCHWARTZ, P. J., concurs.
TUOHY, J., took no part.