THE EDWARD ELECTRIC COMPANY, Plaintiff-Appellant, *v.* THE METRO-POLITAN SANITARY DISTRICT OF GREATER CHICAGO, Defendant-Appellee.

(No. 55456;

First District (3rd Division)—December 13, 1973.

Patrick E. Mahoney, of Chicago (Joseph B. Lederleitner, of counsel), for appellant.

Allen S. Lavin, of Chicago (James Kennedy and James B. Murray, of counsel), for appellee.

Mr. JUSTICE McNAMARA delivered the opinion of the court:

Plaintiff, the Edward Electric Company, filed this action in the circuit court of Cook County seeking additional compensation for extra expenses and for fire repair work pursuant to provisions of its contract with defendant, The Metropolitan Sanitary District of Greater Chicago. A bench trial resulted in a judgment for defendant on the issue of additional compensation, and plaintiff appeals. The trial court entered judgment for the plaintiff on the issue of fire repair work in the amount of $1,992.04. Plaintiff, however, contends that the award was inadequate and also appeals that judgment.

Since this matter revolves around the construction of a written con-

tract 137 pages in length and consists of a record of approximately 2,000 pages, we will attempt to set out the salient facts only.

On February 21, 1963, defendant advertised for competitive bids on miscellaneous electrical work to be performed in conjunction with related contracts on a site located in Stickney, Illinois, Contract Division SH. On April 25, 1963, plaintiff was awarded the contract on the basis of its low cost bid of $478,393.00.

The contract contained several provisions intending to forestall any future contractual difficulties. It specified that cooperation among the different contractors was mandatory since the work of each depended upon, related to, and was tied into the other contractors. Plaintiff had to arrange its work and equipment to be accessible to the other contractors at any time without unreasonable and unnecessary expense. To encourage prompt completion of the contracted work, a liquidated damage clause was inserted into the contract providing for a charge of $150 per day for unfinished work after the agreed upon completion date.

On November 3, 1963, a fire of undetermined origin occurred on the job site. On the basis of plaintiff's cost estimate of $2,534, defendant authorized plaintiff to repair the work damaged by the fire. Plaintiff's bill of $1,992.04 was later rejected by defendant's chief engineer, and plaintiff reserved its claim for that amount while it continued to perform the contract.

Plaintiff's electrical work proceeded on schedule toward its scheduled September 21, 1964 completion date until July 15, 1964. On that date plaintiff notified defendant's chief engineer that other contractor's delays in the completion of their contracts were causing plaintiff to delay work on its contract, and it requested that he grant an extension of its completion date pursuant to the Unavoidable Delay Clause of the General Conditions of the contract, hereafter referred to as Article 27. On September 21, 1964, the chief engineer granted the request. On July 15, 1964, plaintiff had completed 96.12 percent of its contracted work.

From July 15 to March 19, 1965, the actual completion date, plaintiff kept men and equipment on the job site daily. Plaintiff's witnesses testified that it would decide each morning how many men would be needed to work that day, but stated that the crews were not always working because their work was dependent upon the completion of related work of other contractors. Plaintiff's witnesses also stated that defendant never told it to reduce its crews or suspend its work. Although plaintiff notified defendant's chief engineer from time to time that its costs and expenses were increasing and that it would expect additional compensation for the expenses incurred in having to delay completion of its contract, it never presented any claims to the chief engineer specify-

ing the nature of the continuing costs and the chief engineer did not investigate them on his own. Plaintiff seeks damages in the alternative, $41,795.41 or $46,014.12.

Plaintiff's primary contention on appeal is that the trial court erred in construing the contract on the matter of additional expenses. The crux of the issue is the proper construction to be given two of the contractual provisions, the aforementioned Article 27, and the Power of Engineer clause of the General Specifications of the contract, hereafter referred to as Article 2. In relevant part Article 2 states as follows:

"To prevent all disputes and litigations, it is further agreed by and between the Sanitary District and the contractor that the Engineer shall in all cases decide every question of an engineering character which may arise relative to the execution of the work under this contract, and his decision shall be final and conclusive on both parties hereto; and such decision, in case any question may arise, shall be a condition precedent to the right of the contractor to receive any money or compensation for anything done or furnished under this contract."

Article 27 provides in part as follows:

"Should the contractor be obstructed or delayed in the commencement, prosecution, or completion of the work hereunder by any act or delay of the Sanitary District * * * or to other causes, which causes and delays mentioned in this Article 27, the Engineer shall determine to be entirely beyond the control of the contractor, then the times fixed in this Agreement for the completion of said work to the extent specified shall be extended for a period equivalent to the time lost by reason of any of the aforesaid causes mentioned in this Article 27. No such allowance of time shall be made, however, unless notice in writing of a claim therefor is presented to the Engineer before the thirtieth of each succeeding month of all delays occurring within the preceding month, and the Contractor shall satisfy the Engineer that the delays so claimed are unavoidable and substantial and could not be reasonably anticipated or adequately guarded against.

It is further expressly understood and agreed that the Contractor shall not be entitled to any damages or compensation from the Sanitary District except on account of any delay or delays resulting from any act or delay of the Sanitary District or other parties under contract with the Sanitary District, and such damages shall be limited solely to premiums actually paid by the Contractor on his bond and for wages and salaries of employees and other extra expenses of the Contractor that are necessary only for the

proper maintenance of the work and of the plant and equipment of the Contractor during or on account only of a delay or delays caused by the Sanitary District or other contractors for said Sanitary District. The Engineer shall determine the number of days if any, that the Contractor has been so delayed and the amount of such extra costs to the Contractor due to said delay or delays and the amount of extra compensation to be paid to the Contractor therefor, and his decision shall be final and binding upon parties to this contract."

Plaintiff, in asserting its claim for extra compensation, contends that Article 2 of the contract, placing the burden of initiating a damage claim on the aggrieved contractor, is inapplicable. Rather it argues that Article 27 places the burden of initiating the claim on defendant's chief engineer, and the more specific and relevant provisions of the latter Article should apply.

■■ The cases hold that the language contained in Article 2 places the burden of initiating a claim for reimbursement for additional expenses incurred by reason of unavoidable delay on the aggrieved contractor. (*Herlihy Mid-Continent Co. v. City of Chicago* (1947), 331 Ill.App. 78, 72 N.E.2d 739; *Michuda v. Sanitary District* (1940), 305 Ill.App. 314, 27 N.E.2d 582.) And the present record is silent as to any claim made by plaintiff to the chief engineer to determine the nature and amount of the damages suffered as a result of the delay, and in view of such failure to make a claim, we must hold that the action of the trial court in finding for defendant was proper. In so holding, we reject plaintiff's argument that the chief engineer's scope of authority is limited to matters outside those herein discussed. Article 2 provides that the chief engineer shall decide every question "of an engineering character." Plaintiff was seeking damages for expenses incurred in maintaining men, equipment, and plant over an extended period of time. The chief engineer obviously possessed the experience and expertise to determine the propriety of the claim. We do not believe that the chief engineer's mandate should be restricted to one dealing with matters only of a highly technical nature.

Plaintiff, however, also argues that Article 2 is inapplicable because it is inconsistent with Article 27. It maintains that Article 27 places the burden of initiating the claim upon the defendant.

■■ An underlying principle of contract law requires that a court construe the various provisions of a contract in as consistent a manner as possible with the object of upholding the entire contract. (*J. & R. Elec. Co. v. Edward P. Allison Co.* (1970), 125 Ill.App.2d 123, 260 N.E.2d 755.) It is presumed that the parties deliberately inserted clauses in a

contract with specific objectives in mind. (*Bowler v. Metropolitan Sanitary Dist.* (1969), 117 Ill.App.2d 237, 254 N.E.2d 144.) The dashing of one's expectations is not sufficient reason to set aside the lawful responsibilities of a contract. *Luciani v. Certified Grocers of Illinois* (1969), 105 Ill.App.2d 448, 245 N.E.2d 523.

■■ The two Articles are not inconsistent, and they must be construed together in determining the obligations imposed by them on the parties to this contract. As we have noted, Article 2 clearly places the obligation of initiating a claim for payment of additional expenses upon the contractor. Article 27 merely provides that the chief engineer "shall determine" the length of the required delay and the amount of the additional expenses. Rather than construing these terms as placing the burden of initiating the claim upon the chief engineer, we believe that it merely makes explicit the duty borne by the chief engineer to analyze and investigate its merits once he has been notified of the claim. To hold otherwise would compel the chief engineer to investigate the amount of damages in a total vacuum. We therefore hold that the two Articles of the contract are in harmony.

Plaintiff further argues that any duty imposed on it by the contract was excused because of bad faith on the part of the chief engineer. Plaintiff relies on the testimony of one of its witnesses, Edmund Mahoney, for that proposition. Mahoney, then retired, was defendant's assistant chief engineer during the performance of the instant contract. He testified that it was defendant's policy to refuse all requests for contract changes by contractors, and, more specifically, to reject all claims for extras and extensions of time without studying the merits of the requests. Mahoney cited two particular contracts in which such a policy was utilized.

■■■ We initially note that a chief engineer is a public official and hence presumptively acts in good faith and with honest motives in the performance of his official duties. (*Michuda v. Sanitary District* (1940), 305 Ill.App. 314, 27 N.E.2d 582.) Additionally, Mahoney's testimony was directly rebutted by the actions of defendant in the present case. Plaintiff's requests for time extensions were granted, and its bills for extras in the amount of $4,510.67 and additional electrical labor in the amount of $13,102.50 were honored. We cannot hold as a matter of law that the presumption of good faith on the part of the chief engineer was overcome and that plaintiff's burden was excused. Conflicting evidence existed in the record regarding the character of performance under the contract, which resolution was properly made by the trier of fact. *J. J. Brown Co., Inc. v. J. L. Simmons Co., Inc.* (1954), 2 Ill.App.2d 132, 118 N.E.2d 781.

■■ We further hold that, even if plaintiff were excused from its obligations under the contract, it failed to establish damages sufficiently to entitle it to judgment. Both in the trial court and in this court, plaintiff has proposed alternative damage figures, $41,795.41 or $46,014.12. Both figures are based on a theory of straight line damages. In essence plaintiff urges that once it proved the amount of expenses incurred in completing 96.12 percent of its contract, a constant ratio would then be established to show how much time and expense it should have taken to complete promptly the remaining 3.88 percent over the time and expense it actually did take to complete the contract. The fallacy of this argument is the failure to draw a distinction between the amounts and costs of labor and materials used in computing both the base and the dependent figures. Too many variables exist to permit the speculative result plaintiff proposes. This is made clear by the contents of a letter, which was introduced into evidence, from Mr. Walters, plaintiff's president, to defendant. This letter was written in response to defendant's expressed concern over plaintiff's slow work schedule. In the letter, Walters admitted that plaintiff had utilized 20 percent of the allotted contract time to complete six to eight percent of the contract in terms of "dollars and cents." He asserted, however, that 22 to 23 percent of the contract actually had been completed if planning, coordinating and layout were taken into consideration. Walters' letter thus clearly established that the physical completion percentage bore no relation to the overall contract completion percentage. Hence, a constant ratio would be impossible to establish in predicting the cost and time of completing promptly the remainder of the contract.

■■ Moreover, even of the straight line approach as to damages were acceptable in the present case, plaintiff failed to prove its damages in accordance with the standard prescribed in Article 27. That Article limits damages to

> "* * * wages and salaries of employees and other extra expenses of the Contractor that are necessary only for the proper maintenance of the work and of the plant and equipment of the Contractor during or on account only of a delay * * *."

At trial, plaintiff introduced evidence that it had a work crew and equipment on the job site daily, and that the defendant never told it to decrease the number of men or suspend the work. Plaintiff's own witnesses agreed, however, that its employees were not always performing their electrical jobs because of the delay in the related work of other contractors. Plaintiff's superintendent was at the job site daily despite the fact that electrical work might not be performed on a given day. We believe that plaintiff would be in the "proper maintenance" of its work

when it was actually performing the electrical responsibilities it contracted to perform or when it was securing or protecting electrical work it had already completed. We do not accept plaintiff's position that the mere fact that it had idle men and equipment at the job site ready to complete its contract satisfied the above standard. Plaintiff was obligated to detail the number of men, nature of work, and amount of time it actually took to perform its delayed electrical work. Its daily work records revealed no such breakdown. Consequently plaintiff failed to carry its burden of proving the element of damages by a preponderance of evidence. (*Supergear Drive Corp. v. Hollister-Whitney Co.* (1945), 327 Ill.App. 414, 64 N.E.2d 672.) The standard prescribed above is a very exact one which waives all damages and expenses not included therein. *Herlihy Mid-Continent Co. v. Sanitary District* (1945), 390 Ill. 160, 60 N.E.2d 882; *Ryan Co. v. Sanitary District* (1945), 390 Ill. 173, 60 N.E.2d 889; *Underground Construction Co. v. Sanitary District* (1937), 367 Ill. 360, 11 N.E.2d 361.

Plaintiff also contends that the award of $1,992.04 entered in its favor by the trial court for the cost of the work to repair the fire damage was inadequate. It urges that the court should have entered judgment for $3,928.46.

An examination of the record does not support plaintiff's claim for the higher figure. Plaintiff sought $1,992.04 in its complaint. Its proof at trial indicated that the cost of the repair work was $1,992.04. The trial court did not err in entering judgment in that amount.

For the reasons stated, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

DEMPSEY, P. J., and McGLOON, J., concur.