## Moline Malleable Iron Company

### v.

### Samuel McDonald.

*Contracts—Time for Performance of—Extension of Evidence—Custom.*

1. Where the time for the performance of a contract was alleged to have been fixed definitely, but subsequent to such time the complaining party wrote to the other party urging that such party should complete the work

" as soon as possible," he thereby waived the right to avoid the contract on the ground that it was not complied with as to time of performance, the work having been completed within a reasonable time after plaintiff's letter.

2.  In an action brought to recover damages for breach of a contract for the manufacture of certain castings on the ground that they were not like the model, it is *held:* That the evidence established the fact that the castings furnished were what the contract called for.

[Opinion filed December 8, 1890.]

APPEAL from the Circuit Court of Rock Island County; the Hon. ARTHUR A. SMITH, Judge, presiding.

Mr. WILLIAM JACKSON, for appellant.

Mr. J. T. KENWORTHY, for appellee.

LACEY, J.   This suit was commenced by appellee against appellant on a certain contract entered into between them as claimed by appellee, in effect that appellant was to cast for appellee 1,000 pounds malleable castings (called hame fasteners and chains), to be made according to a certain model furnished by appellee and to be delivered to him in Keokuk, Iowa, on or before March 12, 1889.   It is alleged that the work was not done according to the model and not in proper time, and appellee refused to accept the castings when they were complete and placed on board the cars at Rock Island, and sues for damages.   Upon a trial the jury found the issues in favor of appellee and assessed his damages at $191, upon which judgment was rendered by the court below.   The first contention by appellee is that the castings were not delivered in the time required.

While there is very serious controversy about the agreement to deliver by the 12th March, 1889, as appellee claims (the appellant denying such agreement), we think even if there was such the appellee after the 12th March, 1889, waived the time of performance by insisting that appellant should do the work " as soon as possible."   This will be seen by his letter of date May 14, 1889.   The appellant after this

time had then time in which to finish the work that would be reasonable under the circumstances and there is no evidence going to show an unreasonable delay after that. The castings were all delivered by July 1, 1889. The whole dealings and correspondence between the parties show that the time of completion of the work was not regarded as of the essence of the contract.

The next point is, were the castings completed according to the terms of the agreement? The price of the castings was to be $105. It is insisted by appellee that the hame fasteners were not completed in this, that the holes shown by the model in the two pieces of the fastener were not cast or drilled in by appellant, and the rivets which joined the two pieces together and that was designed to go through the holes were not put in.

It is claimed by appellee that the agreement was that the castings were to be like the model and he insists that therefore the holes and rivets should have been in them and that not being so the appellant failed to comply with his contract. According to appellee's testimony, appellant's foreman told him at the time the contract was made that it could not bore the holes in the castings, $i. e.$, to make a core in the casting to run the metal around, thus making a hole, but appellee claims he thought the foreman of appellant's shop meant finishing up-rounding out the outside of the hole. The appellee claims also that the castings were to be japanned. That this work was required to make a workmanlike job.

In opposition to this testimony it appears that appellee about the time appellant and he were making the contract, went to C. J. Cooper, manufacturer of saddlery and hardware, to get prices and to get the drilling of the holes in the castings done. In addition it appears from the testimony of Kralowitz that Ulman, the foreman of appellant, at the time the contract was made, told appellee that appellant could not do the drilling; that they had no facilities and that they never finished castings; that they couldn't cast the holes in those small pieces; that Ulman said he could make the castings and not finish them. The witness further stated that japanning and finishing

was out of appellant's line of business. They could not do that if they tried. Ulman told appellee to go over to Cooper's, that he was prepared to do the work. The custom of the shop was that if it made a contract to make malleable castings, "to just cut them and anneal them and then brighten them; casting as small as this model would not be even ground unless it is mentioned, * * * we prepared and finished them as we usually and customarily finish malleable castings."

W. T. Ball, a malleable iron manufacturer in Moline, testified, touching the custom in cases like this, that "if an order was made for such pieces as these we would expect to make such pieces of iron malleable except the holes." The hole could not be made except to drill it and that would not be expected unless specified and understood at the time and it would be charged for extra. Drilling of holes in malleable casting is a process entirely separate from the production of malleable castings, and japanning is no part of the work. "It is not customary to ship them in paper boxes or wrap them." Ulman testified that he told appellee the holes could not be cored, they would have to be drilled, and that appellant did not do that, he had no means of doing it, and told appellee he could get it done at Cooper & Co.'s.

Appellee, however, denies the evidence about going to Cooper & Co.'s shop to inquire about price of drilling holes and also the conversation with Ulman. His case rests, however, on the fact of whether or not, according to the custom of such work where there is nothing said about drilling holes, it is the duty of the manufacturer to drill them. The appellant procures clear evidence that such is not the custom, and appellee produces no evidence in contradiction, but rests his case on the fact, as he alleges, the castings were to be like the model.

In this state of the evidence the jury were not justified in disregarding the appellant's evidence on that point and returning a verdict for appellee. Besides, we have examined the evidence very carefully, and have arrived at the conclusion that the overwhelming weight of it is that appellee well knew, at the time the contract was made, and so understood it, that

the holes were not to be drilled in the castings and that they could not be cast in. As to the japanning, he had no excuse for supposing that was to be done, and we are forced to the conclusion that he did not so understand it. The other objections to the castings we regard as captious.

We think, then, that the manifest weight of the evidence is against the appellee and the verdict. It will not be necessary to notice other questions raised on either side. The judgment is therefore reversed and the cause remanded.