(No. 12876.—Reversed and remanded.)
JOHN M. FANNIN, Defendant in Error, *vs.* MAY DEVINE
    *et al.*—(WILLIAM SEYMOUR, Plaintiff in Error.)

*Opinion filed October 23, 1920—Rehearing denied Dec. 8, 1920.*

1. CONTRACTS—*a contract drawn up by real estate broker with his client will be construed most favorably to client.* A contract drawn up by a real estate broker for a deed to the property of his client will be construed most favorably to the client, where the broker has been the client's confidential adviser and has been her agent in the care and management of the property.

2. SAME—*time, although fixed, is not necessarily of essence of contract in equity.* The parties may make time of the essence of their agreement, and when it distinctly appears that they have done so and no peculiar circumstances have intervened to prevent or excuse a strict compliance it must be considered and treated as of the essence, but the mere fact that the time is fixed does not necessarily, in equity, make it of the essence of the contract.

3. DEEDS—*party who has contracted to return deed given for a loan is not entitled to partition.* One who accepts a deed under a contract to return it when the grantor shall have paid him a certain sum above his expenses in taking over and maintaining the property until the grantor finds a purchaser is not entitled to demand partition upon conveying an undivided one-half interest in the property, but he and his grantee with notice will be required to deed the property to the purchaser found by the first grantor in accordance with the terms of the contract.

4. SAME—*when a grantee must furnish correct statement of his account.* A grantee who accepts a deed under an agreement to reconvey the property for a stipulated sum over and above his expenses in clearing up and maintaining the property if the grantor finds a purchaser within a fixed time, owes the duty of furnishing a correct statement of the amount legally due him when requested so to do by the purchaser secured by the grantor.

WRIT OF ERROR to the Circuit Court of Cook county; the Hon. JESSE A. BALDWIN, Judge, presiding.

ALFRED E. HOLT, for plaintiff in error.

GEORGE C. OTTO, for defendant in error.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

This writ of error is prosecuted by William Seymour to review a decree of the circuit court of Cook county for the partition of a certain lot known as No. 2569 North Clark street, Chicago, and dismissing for want of equity his cross-bill for a conveyance to him of the lot. The bill for partition was filed by the defendant in error, John M. Fannin, against May Devine, Mary E. McNulty, William Seymour, the Chicago Title and Trust Company, trustee, Herman Jackson, Thomas J. Dee, Henry A. Klein, Charles A. Peterson, Alvina Plagman, Charles T. Alford and Florence Alford. The right to partition was contested only by plaintiff in error and Mary E. McNulty, the other defendants to the bill being tenants in the premises and other parties interested, or trustees named in three certain trust deeds given on the lot by Mary E. McNulty. Defendant in error and May Devine were the parties defendant to the cross-bill, and issues were formed on their answers to the cross-bill and on the answers of Seymour and Miss McNulty to the original bill, denying the right to partition.

The material facts are, that prior to 1914 defendant in error was engaged in the real estate business in Chicago under the name of Jno. M. Fannin & Co., and had had as a patron for ten years or more Mary E. McNulty. Miss McNulty had inherited from her parents the lot in question, improved with a three-story brick residence, and had converted the residence into a flat-building. She was occupying one of the flats and through Fannin had rented the other two flats at $60 each per month. The property was incumbered with first, second and third mortgages, the last two payable in installments, and all three were to become due on or prior to March 6, 1917, and amounted to $11,934 on October 6, 1914. Miss McNulty had assigned the rents to accrue as security for the third mortgage, that assignment to be resorted to on default on any of the mortgages. Pay-

ments were overdue on the first and second mortgages and a payment was shortly to become due on the third mortgage. The property had been sold for taxes assessed against it in the sum of $312.20, with a penalty of $21.08, and had not been redeemed. The holder of the second mortgage was threatening immediate foreclosure. She owed her bank on each of two demand notes given by her the previous year for money for her personal wants, payment of which had at her request been guaranteed by Fannin, and the bank was demanding payment. Including the payments falling due on the incumbrances, the cost of maintaining the property was considerably in excess of the income from it. Miss McNulty was without means to live on, outside the property. Fannin had refused to make her a loan and she could not borrow from others. The property was worth from $12,500 to $16,000. She had been unable to sell the property and had asked Fannin to buy it and he for a time declined. They finally entered into an agreement by which she conveyed to him the property by warranty deed dated October 6, 1914, which he recorded on the same day. On that same day they both signed and sealed a memorandum drawn by Fannin and dated on that date, which is in the following words and figures:

"*Miss Mary E. McNulty, City:*

"In accepting deed to your property No. 2569 N. Clark street, I hereby agree that in the event of your securing a *bona fide* purchaser for the property at any time between date hereof and May 1, 1915, I agree to deed back the property to you or the purchaser for a consideration of five hundred ($500) dollars over and above all costs, charges and expenses that I may incur in taking over the property and maintaining it up to such time that purchaser may be found. It is further understood and agreed that you are to have possession of the third flat in said building No. 2569 North Clark street free of rent until January 1, 1915."

Fannin paid the unsecured notes aforesaid, paid the overdue installments on the incumbrances and the subsequent installments as they fell due, and at the times of such payments had each of the notes of Miss McNulty canceled

when payment was in full and retained the notes, and had the payments indorsed on the notes when partial, and continued to keep her account with him as he had done for years before, so as to show all receipts and disbursements pertaining to this property. Miss McNulty occupied her flat, rent free, until January 1, 1915. Thereafter Fannin called upon her for possession or payment of rent. She having paid no rent he began suit, and on February 13, 1915, obtained judgment for possession. On March 12, 1915, through Seymour, she paid him $60 on rent due, and was given a receipt reciting that on receiving $60 more by March 16, 1915, Fannin would allow her to remain in the flat until April 1, 1915. She paid the other $60 March 16, 1915. On April 16, 1915, she vacated the flat, after Fannin had obtained a second judgment in forcible entry and detainer for possession and after a writ of restitution had been served on her.

On March 3, 1915, Miss McNulty made and recorded an affidavit to the effect that her deed to Fannin was a mortgage to secure certain advances by him to her. She had on February 19, 1915, contracted with Seymour for a sale to him of the property in question subject to the incumbrances thereon, and on that day executed a warranty deed to him for $470, which was left in the hands of her agent, E. B. Kendall, through whom she made the sale, to be by him held until Seymour paid the consideration. Seymour completed his payments in full for the deed and it was delivered to him by Kendall about April 24, 1915, and was recorded May 1, 1915. Seymour, shortly previous to this time, had called on Fannin to make him a statement of the amount due him from Miss McNulty concerning the property in question, and Fannin delivered to him a statement about April 25, 1915, showing $2366.78 paid out to her and for her on the incumbrances and for taxes, attorneys' fees and expenses and for the unsecured notes paid for her, and $200 paid to her in money and $500 for bonus

as agreed.  No credits whatever were noted or given for
the rents collected by him.  He even charged her "for April
rent lost, $60."  A short while afterwards, about May 20,
1915, Seymour called on Fannin again and asked him to
give him a correct statement of amount due, with the cred-
its for rent, and told him he had bought the property and
wanted to pay him the amount due and clear up the matter
and have the property released.  Fannin refused, and said,
"There are no credits."  He also told Seymour that he
was about twenty days too late and demanded $3000 for
a deed.  Afterwards, in October, 1915, Fannin offered Sey-
mour $1000 for his interest in the property, but Seymour
declined to take it and again demanded a statement from
Fannin of the correct amount due, which was refused.  It
further appears from the evidence that Fannin for a valu-
able consideration, on November 1, 1915, made a quit-claim
deed to Daisy Devine, his sister-in-law, to an undivided
one-half interest in the property, and that Daisy Devine
by quit-claim deed conveyed the same to May Devine, her
sister, on November 23, 1915, and that Fannin filed his bill
for partition December 15, 1915.

The main question contested is whether or not the $200
paid by Fannin to Miss McNulty at the time she made the
deed to him, October 6, 1914, was a loan or was a part
of the consideration paid to her for her equity in the prop-
erty and for which sum he was to have a deed to the prop-
erty in pursuance of a contract of sale, with a right to her
to have a re-sale of it to her on her re-payment of said sum
and all amounts that he had paid on the three incumbrances
if she found a purchaser by May 1, 1915.  Miss McNulty's
positive testimony on that question is that the $200 was a
loan to her by him, and that his oral agreement was that
he would also pay off for her her two unsecured notes in-
dorsed by him to the bank, redeem the lot from tax sale,
pay the amounts due on the three loans, and that she was
to have until May 1, 1915, to sell the property and re-pay

him out of any sale she might make of the property, and that for his trouble and outlay he was to have paid him, in addition to said amounts, $500 as bonus or commission. His positive testimony is that he bought the property out-and-out from her and that her deed to him was an abso-. lute deed, and that his oral contract was that he was to re-sell the same to her for all of said amounts, which were to be paid to him out of any sale of the property made by her between the date of her deed and May 1, 1915, she also to pay him $500 as a bonus over and above all of said amounts so paid to and for her. He was supported in his contention by the testimony of his stenographer, Anna V. Penovich. Miss McNulty was supported by several statements and communications made by Fannin to her. In a statement dated December 14, 1914, he furnished her complete items of all accounts that he had charged against her, which include the amount of cash paid to her October 6, 1914, ($200,) notes paid for her unsecured, and amounts paid upon the three loans. This account that he debits her with, also includes the recorder's fee for recording the deed she made to him October 6, an attorney's fee in connection with the deed, an amount paid the janitor for the building for the month of November, an amount paid for plate glass insurance, and for electric lights and a shade for the building. The total amount of debits against her for items that he paid out is $1140.03. He also credits her in the same statement for all rents he had collected on the building, and for a balance of $50.05 that he owed her on this same account that had been running since he had had the building in his possession, for renting and paying incumbrances, etc., the credits totaling $455.05, and concludes his statement by showing a balance due him of $684.98. On January 2, 1915, in answer to a letter from her, he wrote her that the exact amount which he had expended on the property and had paid to her and for her was $763.35, and that all he asked her to pay him for "returning your deed to the

property is just what money I have put into it, plus $500."
In a communication to her December 18, in reply to her
letter, he said, "It will cost you to redeem the property at
this time, not considering commission on sale, $1591.63."
He further stated to her in that communication that the
amount included $334.63 for the taxes of 1913, which he
had assumed but which had not been paid. In other com-
munications concerning the property he makes inquiries and
surmises as to her ability to get the money "to redeem the
property."

It is argued by plaintiff in error that the word "redeem"
implies the existence of a debt and negatives the idea of
an absolute sale, and it was so held by this court in *Work-
man* v. *Greening*, 115 Ill. 477. It is further argued that
by the use of the word "redeem," as used by defendant in
error in his communications to Miss McNulty, and by rea-
son of the manner of his accounting to her, she is corrobo-
rated in her testimony to such an extent that this court, on
the question whether or not their contract was for a re-sale,
ought to at least find that the evidence leaves it in doubt,
and that under the authority of *Keithley* v. *Wood*, 151 Ill.
566, we ought therefore to hold that the deed to Fannin
was intended as a mortgage. We recognize the rules of
law laid down in the cases above cited, but we do not think
they are necessarily to be applied to this case. We pre-
fer to rest our decision solely upon the written memoran-
dum or contract signed and sealed by the parties as hereto-
fore set out.

What is the contract set out in the memorandum or con-
tract? By the express terms of that memorandum Fannin
agrees that in the event Miss McNulty secures a *bona fide*
purchaser for the property at any time between October 6,
1914, and May 1, 1915, he will deed the same back to her
or to her purchaser for a consideration of $500 over and
above all costs, charges and expenses that he may incur
in taking over the property and maintaining it up to such

time. That was his sole and complete contract, except that he further agreed that she should have possession of the third flat free of rent until January 1, 1915. Under a familiar principle of law this contract should be construed more favorably to Miss McNulty than to Fannin, who dictated the contract and prepared it himself. He was her agent at that time for the care and management of this property and had been for years and was her confidential adviser. Taking the contract literally, according to its terms, it was complied with in full when Miss McNulty secured a *bona fide* purchaser after October 6, 1914, and before May 1, 1915. She not only secured this *bona fide* purchaser, but she had him make complete payment therefor before delivering him the deed, which she did on April 24, 1915. The contract does not provide in express terms that Fannin was to be paid all the money due him before May 1, 1915. His obligation was complete to re-deed the property when she secured the *bona fide* purchaser before that date. He was asked by Seymour to make a statement of the amount due, and he gave Seymour an incorrect statement, as he well knew, by not giving him the benefit of the credits for the rents he had received from the property and which he acknowledged in his statements to Miss McNulty should be deducted from the amounts so paid out by him. Seymour, as her grantee, was entitled to redeem the property upon the same terms as was his grantor, Miss McNulty. This demand and statement were made before May 1, 1915, and no correct statement has ever been furnished to Seymour by Fannin although such request was repeatedly made.

Seymour's deed was recorded May 1, 1915, and Fannin's grantee, May Devine, is chargeable with notice of Seymour's rights in the premises. As the time was not fixed by the terms of the contract as to when Fannin should be re-paid all of his expenditures aforesaid and the $500 bonus, it was not absolutely necessary that it be paid by May 1, 1915, by Seymour. Even if it could be said that

the time for this payment was fixed by implication, time was not made of the essence of the contract. In equity time is not necessarily deemed of the essence of the contract when the time is fixed. The parties may make time of the essence of their agreement, and when it distinctly appears that they have done so and no peculiar circumstances have intervened to prevent or excuse a strict compliance, it must in equity be considered and treated as of the essence. (*Morgan* v. *Herrick,* 21 Ill. 481.) In this case it was Fannin's duty to have furnished a correct statement of the exact amount justly and legally due him under his contract. He had the opportunity to do so, and was requested to do so by Seymour more than five days before May 1, 1915. Having at all times refused to make a statement of the correct amount due, no good reason appears to us why Fannin and his grantee should not be required to deed this property to Seymour on the payment to him of all of his expenditures on the property and the amounts paid to and for Miss McNulty on the contract and the $500 bonus aforesaid. Plaintiff in error should also be required to pay him all subsequent amounts paid on said loans and all amounts paid out for reasonable repairs and expenses on the building, including insurance, taxes, and all other legitimate outlays by him since his last statement was rendered, less rents collected by him on the property, and for which he should be held to account under the cross-bill.

The decree of the circuit court is reversed and the cause remanded, with directions to dismiss the original bill for want of equity and for further consideration under the cross-bill according to the views herein expressed.

*Reversed and remanded, with directions.*