RALPH CANTRELL *et al.*, Plaintiffs-Appellees, *v.* WILLIAM KRUCK *et al.*, Defendants-Appellants.

(No. 73-279;

Second District (1st Division)—February 25, 1975.

Reid, Ochsenschlager, Murphy & Hupp, of Aurora (John A. Lundquist, William C. Murphy and Timothy A. Rueland, of counsel), for appellants.

Benn E. G. Eilert, of Geneva, for appellees.

Mr. PRESIDING JUSTICE SEIDENFELD delivered the opinion of the court:

The defendants appeal from a judgment ordering them to convey real estate to the plaintiffs in specific enforcement of a contract. They contend that the plaintiffs were in default at the time set for closing and that the court erred in refusing to give effect to the provision of the contract providing time to be of the essence.

The real estate sales contract, concerning a 3.5279 acre parcel, was entered into on June 5, 1971, by the defendants William Kruck and Paula C. Kruck, as sellers, and the plaintiffs Ralph Cantrell, Rose Rita Cantrell, John V. Kral and Darleen M. Kral, as purchasers. The selling price was $67,500. Ralph Cantrell and John Kral signed a note for the earnest money ($6,200) which was made payable on December 1, 1971, to the sellers' real estate agent. The closing date specified in the contract was December 1, 1971 (or 20 days after notice of procurement of a rezoning ordinance, whichever date was later).[1] The customary printed form of the real estate sales contract was used, and it provided that "[t]ime is of the essence of this contract."

It is undisputed that the sellers orally agreed to extend the closing date beyond the December 1 date. The basic dispute is whether the closing was to be postponed only to December 3, 1971, as the sellers claim, or to a reasonable time after December 1.

Ralph Cantrell testified that after the contract had been entered into and before the December 1 date he had visited the property about six times and had a friendly relationship with the sellers. He testified that he and Kral planned to pay for the property by obtaining a mortgage from the Bank of Elmhurst for $50,000. The remainder of Kral's portion

---

[1] A rider attached to the printed form provided that the sale was contingent on rezoning of the property for condominium use and the satisfactory completion of soil tests. The parties, however, stipulated in the course of the court proceedings that the sole issue related to the December 1 closing date specified in the contract and any extensions which had been granted.

of the purchase price was to come from a loan, and Cantrell's remaining portion was to come from the proceeds of the sale of an apartment he owned. He expected to have these proceeds available by December 1.

Some time in November the plaintiffs obtained the personal assurance of the president of the Bank of Elmhurst that their application for the mortgage funds would be approved. Also in November Cantrell learned that his apartment sale might not be closed by December 1, and he then approached the sellers for a conference regarding an extension of the December 1 closing date.

On cross-examination Cantrell stated that he could have closed the present transaction with the defendants even without the apartment sale. This testimony, however, contradicted his previous deposition, during which he had said that he could not have closed the sale with the defendants without the proceeds from his other deal. In explanation of the inconsistency, he testified that what he meant in his deposition was that he preferred to use the proceeds from the other transaction, but that if the proceeds were unavailable he did have other funds with which to close the transaction on December 1.

A conference was held in the Krucks' home late in November between Ralph Cantrell and John Kral representing the purchasers and the Krucks. The testimony is conflicting as to what was said at the conference by the various parties. Cantrell stated that after he and Kral had arrived at Krucks' home and after a social conversation, he explained the possibility of his apartment transaction closing later than he had originally expected. He then requested a closing date of December 10 or 11, to which Mr. Kruck responded, "I don't care whether it is two days, two weeks or two months. What is the difference?", which in the context of the conversation was a reference to the fact that the sellers were going to continue to live on the property as the tenants of the purchasers. Kral essentially corroborated Cantrell's testimony.

On cross-examination Cantrell admitted to having previously stated in his deposition that he had no recollection of how long an extension he had requested from the Krucks.

The defendant, William Kruck, testified that after Cantrell asked for "a couple of days extension on the closing date," he responded by saying "O.K. That makes it December 3rd. Two more days will not make any difference on a good deal."

Mrs. Kruck stated that Cantrell asked for 2 days because the deal which was originally supposed to close earlier had been delayed and he needed the extra time. She stated that her husband then said, "Two days. Fine. It is a good deal." She admitted, however, in cross-examination that Cantrell might have said "a couple of days" or "several days," but

she was definite that her husband used the specific date of December 3 in the conversation.

An attorney for the defendants testified that Mrs. Kruck called her on approximately November 23 and advised her that December 3 was the closing date. The attorney testified that she then called plaintiffs' attorney on November 26, 1971, and stated her understanding that the parties were going to close on December 3. She said that the plaintiffs' attorney's only concern was the location of the closing; he never questioned her understanding of December 3 as the date. She again called the plaintiffs' attorney on November 29, and she was told to call him back on the following day because he still did not know where the closing would be held. She again called on November 30 and this time was told that plaintiffs could not close on December 3 but that they thought they could close on December 10, a date which they felt would be agreeable to the defendants.

The plaintiffs' attorney, however, testified differently. He stated that all he said on November 26 was that the deal would to closed in the near future; on November 30 he advised defendants' attorney that the parties had agreed to an extension of time for closing, which she apparently did not know, and she said if that was the agreement it would be all right with her.

A letter dated November 30 from plaintiffs' attorneys to defendants' attorney confirmed the plaintiffs' attorneys' statement during the telephone conversation that the plaintiffs would not be ready to close until December 10, and although it appeared that the defendants had no objection, the letter asked that their attorney verify that date with them. On December 6 the defendants' attorney, in reply to the November 30 letter, wrote to plaintiffs' attorney that her clients had refused to grant an extension.

William Giova, the president of the Elmhurst Bank, testified that on approximately November 26 Cantrell and Kral had submitted an application for a mortgage and he had written on the top of the application a notation, "try to arrange closing for Fri.-12/3/71." Mr. Giova testified that although he did not remember a request from either Kral or Cantrell, he assumed he wrote the note because that was the date the parties wanted to close the transaction. Both Kral and Cantrell, however, testified that they did not request or indicate to Giova that December 3 would be the closing date.

A letter dated December 1 was sent from Cantrell to the Krucks with the reminder that he had told them at the extension meeting that he was going to be delayed in closing his other deal and asking if they would please plan the closing on December 11th. This was delivered

December 6. On December 4 the Krucks had notified their attorney by letter that they considered the contract void since the closing date of December 3 was not met.

It appears from the testimony that Cantrell's other transaction, on the sale of his apartment, had closed approximately December 7.

On these facts the trial judge, sitting without a jury, found that at the extension meeting December 3 was set as the expected time when the closing could take place, but that the intention of the parties was to accommodate Cantrell's closing of the other transaction. He found that the agreement was to wait a reasonable time for the other transaction to close and that December 10 or 11 was not an unreasonable time.

The defendants argue that the oral extension of the closing date under the contract to December 10 or 11 was not proved, and, assuming the extension to December 10 or 11 was agreed upon orally, the agreement is unenforceable for lack of consideration for the additional promise. They further argue that there is no basis for the court to impose a reasonable time for performance in place of the parties' agreement. The plaintiffs argue that the weight of the evidence supports the court's ruling on the controverted facts, and that the "time of essence" clause was waived without requiring consideration. Each side claims the equities lie in their favor.

■■ No citation of authority is required for the general proposition that forfeitures of contracts are not looked upon with favor in the courts. The extent to which a "time of the essence" provision in a contract will be strictly enforced depends on the intentions of the parties as determined primarily by the language used viewed under the circumstances surrounding the agreement as they reflect on the meaning of the words. (*Martindell v. Lake Shore National Bank* (1958), 15 Ill.2d 272, 283.) A strict construction which renders a different result from that intended by the parties will not be adopted. *Schek v. Chicago Transit Authority* (1969), 42 Ill.2d 362, 364.

■■ A seller may, by his conduct, waive his right to declare a forfeiture of a contract of which time is of the essence; and though this may not necessarily be an absolute waiver of the right, it amounts to a suspension recognized by equity, and the right of forfeiture may be resumed only by giving definite and specific notice of an intention to require performance within a reasonable time. (*Forest Preserve Real Estate Improvement Corp. v. Miller* (1942), 379 Ill. 375, 382; *Fox v. Grange* (1913), 261 Ill. 116, 119-120; *Craft v. Calmeyer* (1934), 274 Ill. App. 296, 307.) Or, an agreement to extend time may be viewed as a modification of the contract in which the mutual promises import consideration and may be relied upon to prevent a forfeiture. *Kissack v.*

*Bourke* (1906), 224 Ill. 352, 357-8; *McQueeny v. Daily* (1957), 14 Ill. App.2d 477, 480.

■■ The trial court found that the parties had agreed to an extension of the closing date beyond the date of December 1 provided in the original agreement, and because no definite meeting of the minds was reached as to the exact time of the new closing, the plaintiffs were justified in relying upon the understanding that they would have a reasonable time to close. The court found that the plaintiffs were willing and able to close within that time. The court also found from the evidence that the plaintiffs had the financial ability to close on the date of December 3. The findings of the trial court will not be upset on review unless they are against the manifest weight of the evidence, a rule which is particularly applicable when the findings are to a large extent dependent on the credibility of the witnesses. (*Geist v. Lehmann* (1974), 19 Ill. App.3d 557, 561.) We conclude that these findings are supported by the evidence. The granting of the remedy of specific performance was within the court's sound discretion, which was exercised in this case properly and equitably. (*Sweeting v. Campbell* (1956), 8 Ill.2d 54, 56; *Hunter v. DeMay* (1970), 124 Ill.App.2d 429, 434-35.) We therefore affirm the judgment below.

Affirmed.

GUILD and HALLETT, JJ., concur.