GUS G. KITSOS *et al.*, Plaintiffs-Appellants, *v.* TERRY'S CHRYSLER-PLYMOUTH, INC., *et al.*, Defendants-Appellees.

First District (5th Division)   No. 78-522

Opinion filed April 6, 1979.

Nicholas T. Kitsos, of Chicago, for appellants.

Louis Biro and Steven B. Salk, both of Chicago, for appellees.

Mr. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

The issues presented by plaintiffs in this appeal are whether the trial court properly granted defendants' motion for summary judgment and denied that of plaintiffs in this contract action.

On July 12, 1976, plaintiffs entered into a written contract to purchase from defendants the assets of Terry's Chrysler-Plymouth, Inc. Paragraph 2 of the agreement provided for a closing date of August 1, 1976, or at such other time to which the parties would subsequently agree in writing. Paragraph 6 stated that plaintiffs would pay defendants $5,000 upon the execution of the agreement, with the balance to be paid upon closing—except for those amounts representing payments for the automobile parts stock, which were to be paid upon receipt of an inventory to be taken by Bud King and Associates within 15 days after closing. Paragraph 10 required that defendants furnish plaintiffs with a verified list of the business's existing creditors at least 10 days prior to closing. Paragraph 14 recited that the entire agreement was contingent upon plaintiffs securing a Chrysler-Plymouth franchise from Chrysler Motors Corporation; that if such franchise were not secured, the agreement would be void; and that defendants would cooperate fully with plaintiffs in their application for a franchise. Paragraph 15 stated that if plaintiffs did not receive a franchise commitment from Chrysler by the closing date, or if the lesser of the premises upon which the business was situated refused to accept defendants' assignment of their lease to plaintiffs, then the agreement could be cancelled at plaintiffs' option—whereupon defendants would return the $5,000 down payment.

It appears from the record that plaintiffs applied to Chrysler for a franchise that same month and that they also contacted Norman Patterson, the lessor of the premises, concerning a lease. On July 20, 1976, Patterson executed a lease to plaintiffs, which was to become effective on September 1, 1976. On August 1, the stated closing date, plaintiffs had not yet received a franchise commitment from Chrysler, and the closing was not held. While it is undisputed that the parties did not agree in writing to another closing date, as provided in the contract, defendants nonetheless (on August 3) tendered to plaintiffs the verified list of creditors required by paragraph 10 to be furnished at least 10 days prior to the closing date. On August 13, defendants notified plaintiffs by letter that they were declaring the contract to be null and void for failure to close on August 1

or at any other date agreed to in writing and returned plaintiffs' $5,000 payment. Defendants sent a copy of this letter to Chrysler which, in reliance thereon, ceased processing plaintiffs' franchise application.

On September 9, 1976, plaintiffs filed the instant action for breach of contract, seeking specific performance as well as special and punitive damages, and soon thereafter moved for summary judgment. In response to the motion, however, defendant Terry Kunes stated in an affidavit that time was of the essence of the contract; that no closing date after August 1 had been agreed upon in writing or orally; and that therefore the contract was properly rescinded for failure to close on August 1. Daniel Glecier, attorney for defendants, also stated by affidavit that he spoke with plaintiffs' counsel by telephone after defendants rescinded the contract and was informed that plaintiffs desired to close in escrow, commencing operations by September 1, 1976; that defendants would be returned to status quo if the franchise were not ultimately secured; that he (Glecier) responded that such an arrangement would not be acceptable; and that he had never been advised by plaintiffs or counsel that they were willing to close unconditionally pursuant to the contract as written. Defendants in turn moved for summary judgment on the basis of the above affidavits, and in response thereto plaintiff Gus Kitsos filed an affidavit wherein he alleged that defendants were aware that plaintiffs had entered into a lease with Patterson effective September 1 and that plaintiffs' franchise application was pending; and that until August 24, 1976, defendants were preparing to close on the weekend closest to September 1, when Bud King and Associates would be able to take the inventory required in paragraph 6. Also submitted was the affidavit of A. W. Wagner, a Chrysler employee, which acknowledged that plaintiffs' franchise application was received in July of 1976; that on August 23 he received a copy of the letter defendants sent to plaintiffs on August 13, advising them that the contract was terminated; and that thereupon the processing of the franchise application was ceased.

On February 18, 1977, after considering the arguments of the parties, the trial court entered an order finding that plaintiffs failed to secure a franchise commitment from Chrysler by the August 1 closing date, as required by the contract; that the parties did not agree in writing to a later closing date; and that time was of the essence of the contract. The trial court accordingly granted defendants and denied plaintiffs summary judgment. Plaintiffs subsequently moved to vacate the order and, in support of·this motion, filed an additional affidavit of Kitsos stating that after August 1, 1976, he was in constant contact with an agent of defendants concerning the scheduling of the inventory to be taken by Bud King and Associates as close to September 1 as possible. Plaintiffs' attorney also submitted an affidavit stating that he received the verified

list of creditors from defendant on August 3, 1976; that on August 6, 1976, plaintiffs sent notice to these creditors; and that all parties worked for a closing after August 1, 1976. Plaintiffs' motion to vacate was denied and this appeal followed.

OPINION

Plaintiffs contend that the trial court erred in denying them and granting plaintiffs summary judgment. They ask that we reverse the order, enter interlocutory summary judgment in their favor on the question of liability, and remand for consideration of damages.

■ While summary judgment is to be encouraged, it is a remedy to be awarded with caution in view of its drastic nature. (*Rivan Die Mold Corp. v. Stewart Warner Corp.* (1975), 26 Ill. App. 3d 637, 640-41, 325 N.E.2d 357, 360.) Its purpose is to determine whether there is a genuine issue as to a material fact between the parties (*Cronin v. Delta Air Lines, Inc.* (1974), 19 Ill. App. 3d 1073, 1076, 313 N.E.2d 245, 246); however, it should be granted only when the right to it is clear and free from doubt (*McHenry Sand & Gravel, Inc. v. Rueck* (1975), 28 Ill. App. 3d 460, 461, 328 N.E.2d 679, 680). It has been held that "even where there is no dispute in the evidence, if different conclusions may reasonably be drawn from the evidence, it is the province of the jury to draw the conclusion which to them seems most reasonable." *Stambaugh v. Central Illinois Light Co.* (1976), 42 Ill. App. 3d 582, 584-85, 356 N.E.2d 148, 150.

Applying these standards here, we feel that summary judgment should not have been entered in favor of either plaintiffs or defendants, as the record indicates the existence of a material question of fact, as explained below.

■ Initially, we note that parties to a contract may waive delays in performance by conduct which indicates an intention to regard the contract as still in force and effect. (*Peterson Steels, Inc. v. Seidmon* (7th Cir. 1951), 188 F.2d 193, 195; *Schmahl v. Aurora National Bank* (1941), 311 Ill. App. 228, 234, 35 N.E.2d 689, 692.) This is true even where the contract requires that agreements to extend the date of performance must be set forth in writing (*Walsh v. North American Cold Storage Co.* (1913), 260 Ill. 322, 103 N.E. 185; *Central Building Co. v. Karr Supply Co.* (1904), 115 Ill. App. 610; 12 Ill. L. & Prac. Contracts §324 (1955); 17 Am. Jur. 2d *Contracts* §467 (1964)) or where time is of the essence of the contract (*Craft v. Calmeyer* (1934), 274 Ill. App. 296).

■■ In the instant case, both parties admit that defendants submitted and plaintiffs accepted the required list of creditors on August 3—two days after the stipulated closing date. Furthermore, plaintiff Kitsos stated in his affidavit that he and defendants were preparing to close on the weekend closest to September 1 when Bud King and Associates were to take the

parts inventory required by the contract, and that he was in constant touch with defendants' agent concerning the scheduling of this inventory. Plaintiffs' attorney also stated in an affidavit that all parties were working toward a closing date after August 1. Neither of these statements was expressly contradicted in any of defendants' affidavits. Furthermore, although defendants in their briefs here asserted that they did not waive the August 1 closing date, on oral argument they agreed that such a waiver resulted when they did not tender the required list of creditors until August 3. In the light of the above, we find that regardless of the fact that there was no written agreement to extend the performance date and that time may have been of the essence of the contract, the parties waived the August 1 closing date.

Having found a waiver of the performance date, we look to the legal relationship which then resulted between the parties, and we see that in Illinois the law provides that when the specified date for performance has been waived by the parties to a contract, the date is extended for a reasonable time. *Moline Malleable Iron Co. v. McDonald* (1890), 38 Ill. App. 589. See also *Shoreham Developers, Inc. v. Randolph Hills, Inc.* (1967), 248 Md. 267, 235 A.2d 735; *Salvatore v. Trace* (1969), 109 N.J. Super. 83, 262 A.2d 409, *aff'd* (1970), 55 N.J. 362, 262 A.2d 385; 6 Williston, Contracts §856 (3d ed. 1962).

On oral argument in this court, after admitting that they waived the August 1 closing date, defendants took the position that a reasonable time for plaintiffs to perform had passed when, on August 13, they sent a letter to plaintiffs which purported to rescind and terminate the contract. Plaintiffs assert in their pleadings that they did not receive the August 13 letter until August 24, apparently because of a change of address to which the notice was directed. In any event, by their letter of August 24—which defendants admit receiving—plaintiffs notified defendants that they were ready and able to close. Thus, the August 1 closing date having been extended by the waiver, we examine the contention of defendants that, as a matter of law, a reasonable time had passed on August 13 when they sent their letter of rescission.

■ In this regard, it is clear that the question of what constitutes a reasonable time is ordinarily one of fact. (*Pel-Aire Builders, Inc. v. Jimenez* (1975), 30 Ill. App. 3d 270, 274, 332 N.E.2d 519, 522; *J. J. Brown Co. v. J. L. Simmons Co.* (1954), 2 Ill. App. 2d 132, 140, 118 N.E.2d 781, 785), and we note that neither in their briefs nor in oral argument here do defendants attempt to justify, as a matter of law, the reasonableness of August 13 as a new closing date, nor from our review of the record are we able to come to any such conclusion. To the contrary, it appears to us that a question of fact exists as to whether defendants should reasonably have been required to close on that date. This is indicated from the fact that the

list of creditors was not received until August 3 and plaintiffs were required to give written notice by registered mail of the intended transfer to all of those creditors at least 10 days prior to the closing; from the fact that on July 20 plaintiffs had obtained, and defendants of course were aware of, an assignment of defendants' premises lease effective September 1; from the fact that the parts inventory required by the contract to be taken for both parties by Bud King and Associates had not been taken on August 13 but was scheduled for the last weekend of August; and from the fact that defendants have not denied the allegation of plaintiffs that both parties were working diligently after August 1 towards an early closing date. In view thereof, we conclude that because this factual issue existed, the court improperly granted summary judgment to defendants and, for the same reason, that it properly denied summary judgment to plaintiffs.

Parenthetically, we note our rejection of an additional contention of plaintiffs that defendants could not lawfully rescind the contract because they did not first demand performance. In support of this position, they cite *Craft v. Calmeyer* (1934), 274 Ill. App. 296, and *Hibernian Banking Association v. Bell & Zoller Coal Co.* (1913), 181 Ill. App. 581. However, these cases held that where a contract calls for a series of acts to be performed and where strict performance of these provisions has been waived for a time, then reasonable terms are substituted for the original provisions, and one party may not rescind or declare a forfeiture for failure to adhere to the strict terms of the contract unless he first notifies the other party of an intention to return to the original terms and allows him a reasonable time to comply. They are thus inapplicable to the instant case, where a return to the original terms of the contract as written and compliance with the August 1 closing date is not sought.

For the reasons stated above, the judgment of the trial court is reversed and remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.

MEJDA and WILSON, JJ., concur.