ROBERT P. WILL *et al.*, Plaintiffs-Appellees, *v.* WILL PRODUCTS, INC., *et al.*, Defendants-Appellants.

Second District   No. 82—19

Opinion filed October 5, 1982.—Supplemental opinion filed on denial of rehearing November 10, 1982.

John R. Sloan, of Hall, Holmberg, Sloan, Roach, Johnston & Fisher, of Waukegan, for appellants.

Murray Conzelman, of Conzelman, Schultz, Snarski and Mullen, of Waukegan, for appellees.

JUSTICE REINHARD delivered the opinion of the court:

Defendants, R. E. Peterson and Will Products, Inc., purchasers, appeal from a judgment of the trail court ordering specific performance of a contract to purchase plaintiffs', Robert P. Will and Rena M. Will, real property. The essence of defendants' contention on appeal is that plaintiffs' failure to provide a sufficient title insurance commitment insuring against loss from encroachment of plaintiffs' building onto the adjoining property within the time prescribed in the contract bars specific performance of the contract when, under the facts, there

was no waiver of the time provisions of the contract.

On September 15, 1977, Will, Inc., seller, and Richard E. Peterson, purchaser, entered into a written contract wherein Peterson agreed to purchase the business of Will, Inc., owned by Robert P. and Rena M. Will. The parties further entered into a "Restrictive Agreement" whereby in consideration of the sale of the business Robert P. Will agreed not to engage in the business of operating a wholesale, retail or manufacturing business similar to the one being sold for a period of five years within a radius of 50 miles of the business located in Zion, Illinois. Also appended to the written contract was a lease agreement dated October 1, 1977, signed by the parties which called for a lease of the business property from the Wills for a 2-year period whereupon at the end of that period Will Products, Inc., now owned by defendant Peterson, would purchase said premises, if not previously sold by the Wills. Peterson further personally guaranteed the performance of the contract to purchase the real property. The agreement also contained in specific terms the method of payment, time of performance, and obligations of the Wills relative to a title commitment and survey. Two years later when the time for the sale of the real property arrived, Peterson refused to perform, claiming that an encroachment of the building upon adjoining property was a title defect not cured by the timely issuance of a title commitment policy insuring against damage caused by the encroachment. Suit for specific performance and other relief was brought by the plaintiffs.

At trial, the following evidence relevant to the contention raised on appeal was adduced. On or about September 4, 1979, plaintiffs, through their son, attorney Robert P. Will, Jr., placed an order with Chicago Title Insurance Co. for a title insurance commitment which was issued on September 13, 1979, and given by Will, Jr., to defendants' attorney, Edward R. Holmberg, Jr., a few days thereafter. Among the exceptions in the title policy was the general exception to encroachments "which would be disclosed by an accurate survey." A plat of survey dated September 11, 1979, was sent to attorney Holmberg, and also received by defendant Peterson by mail on September 28. The survey disclosed an encroachment of the pillasters of the building approximately 2 inches into the alley lying to the east of the subject property. The date for purchase of the property which was expressly set forth in the 1977 agreement was October 1, 1979. However, several days before that date Will, Jr., and Holmberg agreed to close on October 15 as Peterson was going to be out of town on October 1. There is no indication in the record that the encroachment was discussed then nor does the record disclose why the closing never

took place on October 15. However, Will, Jr., testified that on October 25 he had a telephone conversation with Holmberg wherein Holmberg said Peterson did not want to go ahead with the purchase because of the prevailing economic situation in the country and because of the encroachment; that Will, Jr., told Holmberg that the title company would give an encroachment endorsement and the Zion city council would vacate the alley; and that Holmberg said he told Peterson that he might have to perform and Peterson said he would perform when ordered to do so by a court. On October 26 Will, Jr., wrote to Peterson stating that the Zion city council indicated the alley would be vacated on November 26 and that the title company also had assured them that they would issue an encroachment endorsement over the encroachments and will insure the title. On the same date, Peterson wrote the Wills, pointing out the encroachment, and certain building code violations not pertinent to this appeal, and electing to terminate the contract to purchase the real property. On December 4 the alley was vacated subject to utility easements. A second commitment for title insurance was issued effective January 7, 1980, which did not make an exception to the encroachment but did specifically make objection to rights of the public, the city of Zion, and utility companies in the vacated alley. It stated that appropriate waiver letters would remove this objection. No letters were obtained from the city or the appropriate utility companies stating that they have no interest in the vacated alley. Will, Jr., testified he had always been willing to obtain a satisfactory title commitment endorsement, but that Holmberg let him know that to do that would be futile. He testified that "[w]e knew from the beginning his client did not want to close." Peterson also admitted he never wanted to buy the building, but the Wills wouldn't sell the business alone without the sale of the building to him. Will, Sr., testified that the sale of the business, the sale of the building, and the restrictive agreement was one package.

In the agreement to purchase the real property, it was expressly provided that 5 days prior to closing, the Wills would furnish a title commitment for an owner's title insurance policy showing good title; that if the title commitment disclosed unpermitted exceptions, the Wills had 30 days from the date of delivery of the title commitment to have the exceptions removed or to have the title insurer commit to insure against loss or damage, and in such event, the time of closing shall be 35 days after delivery of the commitment; that if the exceptions were not removed or insured against within the specified times, the purchasers may terminate, or may elect within 10 days after expiration of the 30-day period to take title as is with the right to de-

duct from the purchase price an ascertainable amount; and that a survey showing no encroachment be furnished prior to closing.

The trial court entered judgment for plaintiffs and ordered specific performance of the contract consistent with its terms for purchase. The court below also issued a memorandum setting forth its findings, which in pertinent part, were that the sale of the business, the lease and sale of the real property, and the restrictive agreement were a single transaction; that the testimony of the defendant Peterson was not credible concerning the closing date; that Peterson had waived the specific closing date; that Peterson was seeking to avoid completing the transaction and his actions misled the plaintiffs from actually obtaining the encroachment endorsement as required by the contract although from their testimony sellers would have obtained such an endorsement; that the vacation of the alley placed plaintiffs in a position to tender good and marketable title; and that specific performance was the appropriate remedy.

It is the defendants' contention that the plaintiffs failed to have the exceptions to the title removed within 30 days of the delivery of the title commitment pursuant to the express contract terms and the defendants terminated the contract by their letter of October 26, 1979. They further argue that even as of the date of trial the plaintiffs had not tendered a title insurance commitment in conformance with the contract requirements since the title commitment of January 7, 1980, contained objections relating to the alley vacation.

■ Under the express terms of the lease and agreement to purchase the real property, defendants were to purchase the property on October 1, 1979, unless the plaintiffs had sold the premises before that date. Other terms of the agreement specified the time period to furnish a title commitment and within what time any exceptions thereto were to be removed. From our examination of the agreement, we do not find any express "time is of the essence" provision. Nevertheless, time may be of the essence by express language in the agreement (*Fannin v. Devine* (1920), 294 Ill. 597, 605, 128 N.E. 745; *Hart v. Lyons* (1982), 106 Ill. App. 3d 803, 805, 436 N.E.2d 723) or may be clearly shown as the intention of the parties by the wording. (*Zempel v. Hughes* (1908), 235 Ill. 424, 431, 85 N.E. 641; *Janssen Brothers, Inc. v. Northbrook Trust & Savings Bank* (1973), 12 Ill. App. 3d 840, 844, 299 N.E.2d 431; *O'Malley v. Cummings* (1967), 86 Ill. App. 2d 446, 449, 229 N.E.2d 878.) The precise phraseology is not important, and the intention of the parties as expressed by the agreement controls. (*Zempel v. Hughes* (1908), 235 Ill. 424, 431, 85 N.E. 641.) We conclude from the express time provision relative to the closing date

and other precise time periods for securing a title commitment and removal of exceptions that time was of the essence.

■■ A party by his conduct may waive his right to enforce a contract provision where "time is of the essence" is originally intended. (*Cantrell v. Kruck* (1975), 25 Ill. App. 3d 1060, 324 N.E.2d 260.) A waiver of a contract provision may be express or implied from acts or conduct. (See *Hart v. Lyons* (1982), 106 Ill. App. 3d 803, 436 N.E.2d 723; *Cantrell v. Kruck*.) The findings of the trial court on this issue will not be upset on review unless they are against the manifest weight of the evidence. (*Cantrell v. Kruck*.) The trial court expressly found Peterson waived the specific closing date and we find that determination supported by the record. It is unrebutted that Will, Jr., stated that the defendants' attorney requested an extension of the closing date to October 15 since Mr. Peterson was to be out of town. The record does not reveal why the closing did not take place then nor whether any further closing date was set. When the specified date for performance has been waived by the parties to a contract, the date is extended for a reasonable time. (*Kitsos v. Terry's Chrysler-Plymouth, Inc.* (1979), 70 Ill. App. 3d 728, 732, 388 N.E.2d 1054.) No other date for closing appears to have been set, and the October 26 letters, which apparently crossed in the mail, indicate plaintiffs' willingness to clear up the encroachment problem and defendants' declaration to terminate the contract.

■■ ■ While we find a waiver of the date of closing specified in the agreement, we must also determine whether there was a waiver of the time provision relative to procurement of a title commitment and removal of any exceptions therein. Generally, the waiver of the time element of one provision of a contract does not necessarily effect a waiver of all its time specifications; the extent to which the contract is modified depends upon the nature of the change and the intention of the parties. (*O'Malley v. Cummings* (1967), 86 Ill. App. 2d 446, 450, 229 N.E.2d 878.) It is evident to us that the action of Peterson in extending the closing date of October 15 and not setting another specific date for closing upon the failure to close on October 15 was also a waiver of strict enforcement of the time requirements in the agreement relative to removal of exceptions in the title commitment. The time set for closing and the time periods for a title commitment and removal of any exceptions are all interrelated. The title commitment was issued on September 13, 1979, and was given to defendants' attorney several days thereafter. By the terms of the agreement to purchase the real property, any exceptions in the title commitment were to be removed by plaintiffs within 30 days of delivery of the title com-

mitment and closing would be 35 days after delivery of the new commitment. Thus, the encroachments would have had to be removed by October 13 according to the provisions of the contract. Nevertheless, the closing date had been extended first to October 15 and then indefinitely beyond October 15 without specific reference to the other time provisions relative to title or without mention of any title problem. Will, Jr.'s, uncontradicted testimony was that in his conversation with Holmberg several days before October 1 they discussed how title was to be taken and Peterson's desire to change the date of closing to October 15. The record does not indicate that there was any discussion of a title defect during this conversation or an expression that the other time provisions in the contract were to be adhered to even though the closing date was extended. We believe that under these circumstances, the other time provisions were impliedly extended for a reasonable time.

Thereafter, plaintiffs obtained a new title commitment issued January 7, 1980, which contained an objection that the vacation of the alley was subject to the rights of the city of Zion and any utility companies which could be corrected by letters from them stating that there were no easements or equipment in the alley. Will, Jr., testified that he had always been willing to get an encroachment endorsement but defendants' attorney had told him Peterson did not want to close. The trial court found plaintiffs had offered, or been able to perform all of the terms and conditions required of them, and considering the credibility of the witnesses, the court found defendants were not willing buyers eager to fulfill the terms of the contract if plaintiffs would tender merchantable title. Under the factual circumstances of the case, the trial court found Peterson's actions misled plaintiffs and excused the actual tender of another title commitment removing all title objections. We, too, conclude that plaintiffs' continuous willingness to obtain an encroachment endorsement insuring defendants against loss coupled with their securing a vacation of the alley was a sufficient expression of willingness to perform under the circumstances considering Peterson's acknowledged unwillingness to purchase the real property. This conclusion is supported by Will, Jr.'s, testimony that Peterson's attorney said Peterson told him that he would perform when ordered by a court.

■ Where the evidence shows that a seller is ready, willing and able to perform, the actual tender of marketable title will be excused where the purchasers decline to proceed with the contract. (*Feldman v. Oman Associates, Inc.* (1974), 20 Ill. App. 3d 436, 439, 314 N.E.2d 338.) We find this to be the case here. The acts of one party to a con-

tract may excuse an actual tender of performance by the other where the evidence shows the latter was able, ready and willing to complete the contract. (See *Greengard v. Bernstein* (1931), 343 Ill. 416, 175 N.E. 424.) Specific performance will not be denied where there is a fair and valid contract and the party seeking performance has performed or offered to perform all of the terms or conditions required of him. (*Greengard v. Bernstein.*) We do not find that *Winters v. Polin* (1941), 309 Ill. App. 458, 33 N.E.2d 497, cited by defendants is applicable under these facts. *Winters* did not involve actions by a purchaser which waived the actual timely tender of a title commitment. Additionally, in *Winters* the title company stated that their policy as written did not cover any loss by reason of encroachment against the title company.

For the foregoing reasons, the trial court properly ordered specific performance of the contract to purchase the real property in question.

Affirmed.

SEIDENFELD, P. J., and UNVERZAGT, J., concur.

SUPPLEMENTAL OPINION ON DENIAL OF REHEARING

JUSTICE REINHARD delivered the opinion of the court:

■ Upon our denial of defendants' petition for rehearing, we find it necessary to answer, briefly, one of the arguments raised therein. It is contended that this court did not address in its opinion whether certain building and fire code violations were uncorrected prior to closing. These violations allegedly would have given rise to defendants' contractual right to terminate the contract. While this issue was raised below and determined by the trial court adversely to the defendants, the point was not raised or argued in defendants' initial brief and is waived. (See 87 Ill. 2d R. 341(e)(7).) Although there was reference to this argument in defendants' reply brief, this is in direct contradiction of Supreme Court Rule 341(e)(7) and (g) (87 Ill. 2d R. 341(e)(7), (g)). (See also *Coons v. Wilder* (1981), 93 Ill. App. 3d 127, 132, 416 N.E.2d 785; *Department of Transportation v. Drobnick* (1977), 54 Ill. App. 3d 987, 993, 370 N.E.2d 242.) Accordingly, we adhere to our original opinion.

SEIDENFELD, P. J., and UNVERZAGT, J., concur.